**Robert REICH, Secretary of Labor, United States Dept. of Labor, Plaintiff,**

v.

**COLE ENTERPRISES, INC., dba Echo Restaurant and William Cole, Defendants.**

**No. C–1–92–479.**

United States District Court, S.D. Ohio, Western Division.

Dec. 2, 1993.

Maureen M. Cafferkey, U.S. Dept. of Labor, Cleveland, OH, for plaintiff.

Roger Edward Friedmann, Loeb, Ney, Vollman, Harper & Friedmann, Cincinnati, OH, for defendants.

*FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT*

SPIEGEL, District Judge.

This matter is before the Court on a bench trial held on November 9 through 11, 1993. This action was brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* In rendering our decision of this matter, we have considered the testimony of the witnesses, the documents admitted into evidence, the Defendants' proposed findings of fact and conclusions of law (doc. 17), the Plaintiffs proposed findings of fact and conclusions of law (doc. 19), the Plaintiff's Post-Trial Proposed Findings of Fact and Conclusions of Law (doc. 25), and the Defendant's post trial Proposed Findings of Fact and Conclusions of Law (doc. 26).

In weighing the testimony of the witnesses, we considered each witness' relationship to the Plaintiff or to the Defendant; their interest, if any, in the outcome of the trial; their manner of testifying; their opportunity to observe or acquire knowledge concerning facts about which they testified; and the extent to which they were supported or contradicted by other credible evidence.

Under Fed.R.Civ.P. 52, we set forth our findings of fact and conclusions of law.

## FINDINGS OF FACT

1. The Defendant Cole Enterprises, Inc., is an Ohio corporation. Defendant William Cole is the president and vice president and owner of Cole Enterprises, Inc. Mr. Cole had the authority to hire and fire employees and direct employees as to their work. Employees viewed Mr. Cole as their employer.

2. From 1989 to August, 1992, Cole Enterprises, Inc. and William Cole operated the Echo Restaurant at 3501 Edwards Road, in Cincinnati, Ohio.

3. The Defendants have not disputed the allegations that: The annual dollar volume for Defendants in 1989 was between $800,000.00 to $900,000.00; The annual dollar volume for Defendants in 1990 was between $800,000.00 to $900,000.00; The annual dollar volume for the company in 1991 was over $500,000.00.

4. Waitresses/waiters were paid $1.96 per hour. They were not paid for time worked before or after their scheduled work shift. The average work shifts were 6:00 a.m. to 2:30 p.m. and 11:30 a.m. to 8:00 p.m. The work employees performed outside of their scheduled hours included setting up dining rooms and tables, making coffee and ice tea, cleaning, putting out side dishes and desserts, filling condiment containers and bussing tables.

5. Former Echo manager, Sam Hensley, and owner William Cole admitted that employees worked past 8:00 p.m.

6. Waitresses/waiters wrote down on a sheet of paper (the "timesheet"), either the time they worked or the shift they worked. At one time, some servers wrote down the exact time they began working and the time they stopped working. Realizing that they were not getting paid for the time worked before and after their shifts, they stopped writing down the exact time and instead wrote down the shift time. Most workers wrote down their shift on the timesheets. Some were told to do this by the co-owner of the restaurant, Nancy Cole.

7. Employees were not aware of the concept of a tip credit and a tip credit was not recorded on employees' pay stubs. Furthermore, the Defendants did not inform its employees that it would take and did take a tip credit.

8. The amount recorded as "tips" on the payroll stubs does not refer to a tip credit but the 8% of employee's total cash register receipts (sales) which is reported as income to the IRS.

9. Before April, 1991, the Defendants took a tip credit of $1.59 per hour, a meal credit of $.25 per hour and paid their employees $1.96 per hour. This equaled the $3.80 minimum wage during that time. After April, 1991, the Defendants took a tip credit of $2.04 per hour, a meal credit of $.25 per hour and paid their employees $1.96 per hour. This equaled the $4.25 minimum wage during that time. This amount was paid for shift hours, not actual hours worked. Therefore, for the unpaid time, those hours worked before or after a shift, employees were not paid $1.96/hour nor did the Defendants take a meal credit or tip credit. Therefore, depending upon the time period, Defendants owe their employees $3.80 or $4.25 for each hour worked before or after a shift.

10. Because in May, 1991, Mr. Cole promised to comply with the FLSA in the future and violations were found after that time, there is a reasonable probability of a recurrence of the acts.

11. Defendants failed to keep and maintain records of the actual hours waitresses and waiters worked.

12. Based upon the evidence presented at trial, the following employees worked the following amount of time unpaid on average:

Michael Brenner = .25 hour/day unpaid
Carolyn Hatfield = .50 hour per occurrence (average of 1 and ½ occurrences per week) unpaid
Sylvia Kennedy = .50 hour/day unpaid
Anita Lawson = 1 hour/day unpaid
Mary Papayiannis = .50 hour/day unpaid
Gertie Sallee = 1 hour/day unpaid
Pat Wolfson = .333 hour/day unpaid

13. Using the employers' payroll records for June, 1990 to June, 1991, the investigator transcribed the hours paid per week for each tipped employee. Looking at timesheets as well as talking to employees about the number of days they worked per week, the investigator developed a chart showing a translation of hours worked into days worked. The investigator's determinations were confirmed by employee testimony during the trial. The investigator computed total days worked from June, 1990 to March 31, 1991, where the minimum wage was $3.80/hour and then from April, 1991 to June, 1991 where the minimum wage was $4.25/hour. He then computed back wages for employees who testified. He did this in the most conservative manner which was to assume the maximum tip credit ($1.84 before April, 1991 and $2.04 after April, 1991) per hour and the $.25 meal credit per hour. In making his computations, the investigator computed the back wages based upon the maximum tip credit— 45 per cent of the applicable minimum wage rate during the year beginning April 1, 1990, and 50 percent of the applicable wage rate

after March 31, 1991—for the time period and based upon a \$.25 meal credit.

14. After discovering that violations occurred after June, 1991, the investigator applied the total days worked in the preceding period (June, 1990 to June, 1991) to the period June 30, 1991 to August, 1992, a period in which he did not have payroll records but one in which he knew there were still minimum wage and record keeping violations. He then computed back wages for employees who worked at the Echo Restaurant between June, 1991 and August, 1992, the date Mr. Cole sold the restaurant.

15. In the case at bar, the employer has not come forward with the precise amount of work performed. Timesheets provided by the Defendants were inaccurate in that for most employees these records indicate only the shift worked, not the actual hours worked. Furthermore, payroll records do not indicate the actual hours worked but merely the shift worked. In addition, the employer has not negated the reasonableness of the inference drawn from the employees'/Secretary's evidence.

## CONCLUSIONS OF LAW

1. Cole Enterprises and William Cole were engaged in the performance of related activities for a common business purpose, constituting an enterprise within the meaning of § 3(r) of the Fair Labor Standards Act of 1938, as amended ("FLSA") from 1989 to August, 1992.

2. Both Cole Enterprises, Inc. and William Cole acted directly or indirectly in the interest of an employer in relation to employees. Therefore, both are employers within the meaning of § 3(d) of the Fair Labor Standards Act of 1938, as amended. *See, Donovan v. Sabine Irrigation Co.,* 695 F.2d 190, 194–95 (5th Cir.), *cert. denied,* 463 U.S. 1207, 103 S.Ct. 3537, 77 L.Ed.2d 1387 (1983). Furthermore, to be considered an "employer," it is not necessary that a person have exclusive control of a corporation's day-to-day functions. An employer need only have "operational control of significant aspects of the corporation's day-to-day functions...." *Donovan v. Agnew,* 712 F.2d

1509, 1514 (1st Cir.1983); *Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 969 (6th Cir.1991).

3. The people listed in Plaintiff's findings of fact number 12 were employees of the Defendants, within the meaning of § 3(e) of the Act, between June, 1990 and August, 1992.

4. The Court has jurisdiction over both Cole Enterprises and William Cole pursuant to § 17 of the FLSA, as amended.

5. Defendants violated §§ 11(c) and 15(a)(5) of the Act in that they have failed to make, keep and preserve adequate and accurate records of their employees and of the wages, hours and other conditions and practices of employment maintained by them as prescribed by regulations issued by the Administrator of the Wage and Hour and Public Contracts Division, United States Department of Labor. 29 C.F.R. § 516.

6. The Defendants violated 29 C.F.R. § 516.2(a), in-that they failed to keep and maintain and preserve the actual hours worked.

7. The Defendants violated 29 C.F.R. § 516.6 in that they did not maintain and preserve the following records for at least two years:

all basic time and earning cards or sheets on which are entered the daily starting and stopping time of individual employees, or of separate work forces, or the amounts of work accomplished by individual employees on a daily, weekly, or pay period basis ... when those amounts determine in whole or in part the pay period earnings or wages of those employees.

Since the Defendants did not keep records of actual time worked by employees, they violated section 516.6 as well as section 516.5 which requires employers to keep and preserve payroll records for at least three years.

8. The Defendants violated 29 C.F.R. section 516.28 in that they did not maintain and preserve the following additional records for tipped employees:

Amount by which the wages of each tipped employee have been deemed to be increased by tips as determined by the em-

ployer ... The amount per hour which the employer takes as a tip credit shall be reported to the employee in writing each time it is changed from the amount per hour taken in the preceding week ... Hours worked each workday in occupations in which the employee receives tips, and total daily or weekly straight-time earnings for such hours.

The Defendants' payroll records indicate a tip credit of $1.59 taken per hour before April, 1991 and $2.04 after April, 1991. The Defendants did not make their employees aware of this tip credit. They neither told their employees nor showed the tip credit amount on the employees' pay stub.

9. Cole Enterprises and William Cole violated the provisions of Sections 6 and 15(a)(2) of the Act by not paying their employees the minimum wage as required by law for pre-shift and post-shift hours worked that were integral and necessary to their employment activities. According to Section 3(g) of the Act, " 'Employ' includes to suffer or permit to work." Defendants directed and/or permitted employees to work before their shift started and after their shift ended. Defendants did not pay employees for pre- and post-shift work. Pre-shift activities are compensable when they are an integral and indispensable part of the employees' activities. *See, Lindow v. United States,* 738 F.2d 1057, 1060 (9th Cir.1984). Moreover, any "cigarette breaks" an employee may have taken are compensable time under 29 C.F.R. § 785.18.

10. In the case at bar, the employees were not paid more than the minimum wage per shift hour. Cole Enterprises and William Cole paid their employees $1.96/hour, less than the minimum wage. Only with the credits that the employer took, $.25 meal credit and $1.59 tip credit ($2.04 after April, 1991), did the employer reach the minimum wage. For the unpaid hours; that is, the pre- and post-shift work, the employer took no credits. Further, there is no overage; that is, there is no cash to apply to unpaid pre- and post-shift work. Therefore, the employer owes its employees $3.80 or $4.25 per hour, depending upon the time period. In addition, there was no agreement between the employees and Mr. Cole to treat the $1.96/hour wage as part of the pre- and post-shift work.

11. Consistent with Section 17 of the Act, Defendants Cole Enterprises, Inc. and William Cole shall be enjoined from violating the provisions of the Act in the future. Corporate officers who act "directly or indirectly in the interest of an employer in relation to an employee," should be enjoined along with the corporate employer. See *Sabine,* 695 F.2d at 196. An injunction is remedial and is ordinarily granted, "even though the employer has ceased the violation, unless the trial court soundly is convinced from the situation that there is no reasonable probability of a recurrence of the acts." *McComb v. Wyandotte Furniture Co.,* 169 F.2d 766, 770 (8th Cir.1948); *See, Hodgson v. Prior,* 340 F.Supp. 386, 388 (S.D.Ohio 1972).

13. Defendants must pay unpaid back wage compensation due employees under the Act in an amount to be determined by the court. The Court may make a reasonable inference, based on the evidence, to determine the unpaid hours worked by employees when an employer has falsified its records or kept inaccurate records. *Anderson v. Mt. Clemens Pottery, Co.,* 328 U.S. 680, 687, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946); *Hodgson v. Elm Hill Meats of Kentucky, Inc.,* 463 F.2d 1186, 1187 (6th Cir.1972).

14. Since the company did not keep records of actual hours worked, the Court may look to employee testimony to determine the amount of unpaid time worked per day. *See Anderson,* 328 U.S. at 687, 66 S.Ct. at 1192; *McLaughlin v. Ho Fat Seto,* 850 F.2d 586, 589 (9th Cir.1988), *cert. denied,* 488 U.S. 1040, 109 S.Ct. 864, 102 L.Ed.2d 988 (1989).

15. Further, the Court can use estimates to compute back wages for similarly situated employees; therefore, all employees need not testify. *See, McLaughlin,* 850 F.2d at 589; *Brennan v. G.M. Acceptance Corp.,* 482 F.2d 825, 829 (5th Cir.1973). In the case at bar, employees testified that they saw other servers such as Shirley Newman, Lilli-

an McDaniel, Rosemarie Eduardo, work pre- and/or post-shift. Further, it is clear from the payroll records and timesheets that there were many more tipped employees who worked similar shifts. Moreover, the investigator's employee interviews confirmed that other servers were not paid for pre- and post-shift work. Therefore, it is reasonable to apply an average amount of time to other waitresses and waiters. Considering the testimony, an average of .50 hour/day is than reasonable to apply to similarly situated employees. Therefore, the computations of the investigator are reasonable amounts of back wages due to employees who did not testify at trial as well as to those who did testify. *See Anderson,* 328 U.S. at 687, 66 S.Ct. at 1192; *McLaughlin,* 850 F.2d at 589. Considering the evidence presented at trial, Defendants owe the employees listed above a minimum of $3,466.10.

16. Since employees were deprived of their rightful wages since at least June, 1990, the employer must pay interest at the rate of eight percent per annum computed from the date of the violations, and costs including reasonable attorney fees. *See Hodgson v. Wheaton Glass Co.,* 446 F.2d 527, 534–35 (3d Cir.1971).

■ 17. Since the secretary has met his burden of establishing back wages due employees,

> The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.

*Mt. Clemens,* 328 U.S. at 687–688, 66 S.Ct. at 1192. The Defendants have not satisfied their burden in this case.

## CONCLUSION

Accordingly, based on the forgoing, we hereby conclude that the Defendants have been unlawfully withholding payment of unpaid minimum wage compensation in the total of $3,466.10 due to fourteen employees as follows:

| Employee | Back wages due |
|---|---|
| Birkla, Virginia | $ 206.53 |
| Brenner, Michael | 155.08 |
| Dixon, Joe D. | 71.76 |
| Eduardo, Rosemarie | 330.29 |
| Hatfield, Carolyn | 149.38 |
| Kennedy, Sylvia | 243.75 |
| Lawson, Anita | 101.20 |
| McDaniel, Lillian | 209.87 |
| Newman, Shirley | 423.44 |
| Papayiannis, Mary | 219.76 |
| Sallee, Gertie | 1,012.75 |
| Scott, Brenda | 96.88 |
| Sheets, Brenda | 123.51 |
| Wolfson, Pat | 121.90 |
| | Total: $ 3,466.10 |

## JUDGMENT

The Court hereby GRANTS judgement in favor of the Plaintiff in the amount of $3,466.10, together with interest at the rate of eight percent (8%) per annum computed from the date of the violation and hereby permanently ENJOINS and RESTRAINS the Defendants, their officers, agents, servants, employees, and those persons in active concert or participation with them, from violating the provisions of sections 15(a)(2) and 15(a)(5) of the Act.

SO ORDERED.