**Alexis M. HERMAN, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**DAVIS ACOUSTICAL CORP.; Davis Specialties Corp.; Burton Fisher; Henry Ashline; and Tyler Construction Corp.; Defendants.**

**No. 79–CV–53 (FJS).**

United States District Court, N.D. New York.

Sept. 9, 1998.

J. Davitt McAteer, Solicitor of Labor, U.S. Department of Labor, New York City (Louis D. Debernardo, John G. Campbell, of counsel), for Plaintiff.

Littler, Mendelson, Fastiff, Tichy & Mathiason, Atlanta, GA (Dudley C. Rochelle, of counsel), for Defendants.

Cade, Saunders Law Firm, Albany, NY (William J. Cade, of counsel), for Defendants.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, District Judge.

### Introduction

This action arises from a Consent Judgment and Order issued by this Court on July 16, 1979 enjoining the Defendants from violating the overtime pay and record-keeping provisions set forth in the Fair Labor Standards Act of 1938 ("FLSA"). *See* 29 U.S.C. §§ 207, 211(c) and 215(a)(2), (5). Subsequent to that Order, the Department of Labor's ("DOL") investigations revealed that the Defendants were violating the provisions of the Court's Order. Thereafter, the DOL initiated civil contempt proceedings. On May 22, 1989, the Court issued an Order finding the Defendants in contempt of the Court's previous Order and ordered further proceedings to determine the amount of compensatory fines, interest, and attorney's fees. For reasons not relevant to this decision, this matter lay dormant until August 16, 1995 when the Court appointed Richard J. Bartlett, Esq., as a special master, to make proposed findings of fact and conclusions of law as to: (1) whether there was a pattern or practice of

violations of the FLSA as alleged in the petition for contempt; (2) whether all the workers alleged to be employees were "employees" within the meaning of the FLSA; (3) what amount of back wages was owed to the employees for FLSA violations during the relevant period of civil contempt; (4) whether back wages should include prejudgment interest; and (5) whether the Plaintiff should be awarded costs and attorney's fees.

### The Special Master's Findings

The special master held 30 days of hearings on these issues which included considering live testimony from 37 witnesses, deposition testimony from another 25 witnesses, and voluminous documentary evidence. Special Master Bartlett issued his proposed findings on November 25, 1997. His report found: (1) that the evidence established that the Defendants' conduct constituted a pattern and practice of conduct violative of the FLSA and the Court's previous Order; (2) that Defendants' workers classified as "independent contractors" during the relevant period, were actually "employees" within the meaning of the FLSA; (3) that the Defendants should be assessed a fine of $1,318,648.93; (4) that the Defendants should also pay prejudgment interest based on the adjusted prime rate pursuant to 26 U.S.C. § 6621(c); (6) that Defendant Burton Fisher should be held jointly and severally liable with the other Defendants; and (6) that the Plaintiff should be awarded reasonable costs, but not attorney's fees.

### The Defendants' Objections

Defendants have filed timely objections to the report of the special master. They contend: (1) that the special master erred by finding a pattern and practice of FLSA violations; (2) that the special master erred in finding that 285 workers of the Defendants were "employees" rather than "independent contractors"; (3) that the special master erred by admitting exhibits 1 and 1A into evidence; (4) that the special master erred by awarding damages to 105 unidentified individuals; and (5) that the special master erred by awarding prejudgment interest for the entire period because significant delays were attributable to the Plaintiff.

### Plaintiff's Objections

Additionally, Plaintiff has filed objections to the special master's report. Plaintiff contends; (1) that the special master erred in computing the prejudgment interest by not applying daily compounding; (2) that the special master erred by not awarding the Plaintiff attorney's fees; and (3) that the special master exceeded his authority by ordering the submission of payment schedules.

### Discussion

■ The Court will accept the findings and conclusions of the special master unless the objecting parties demonstrate that they are clearly erroneous or contrary to law. *See* Fed.R.Civ.P. 53(e)(2). A factual finding is clearly erroneous where although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *See U.S. v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). The Court will evaluate each of the parties' objections pursuant to this standard of review.

### I. PATTERN AND PRACTICE OF FLSA VIOLATIONS

■ In his report, Special Master Bartlett found that the Plaintiff proved by a preponderance of the evidence that 956 of the Defendants' employees performed overtime work for which they were not properly compensated under the FLSA. In making this finding, the special master relied on the testimony of 40 witnesses, as well as documentary evidence of 365 separate instances of conduct which he concluded demonstrated a pattern and practice by the Defendants of consistently failing to pay overtime compensation and intentionally concealing their actions.

Defendants argue that the special master made several legal errors in making his findings. Defendants argue first that the special master erred, as a matter of law, by relying on representative evidence to infer uniform conduct with respect to a variety of positions at different job sites. Defendants cite to testimony in the record where witnesses identify certain job sites at which they *did*

properly receive overtime compensation. Notwithstanding the Defendants' attempt to couch their objections in the form of "legal" objections, the Defendants are actually objecting to the factual findings of the special master, and not to mistakes of law. As such, the Court will review the special master's findings for clear error.

The special master found that the Defendants consistently failed to pay their employees; that this "practice" was common knowledge among the employees, regardless of their position or job site; and that the Defendants used no fewer than nine different schemes to cover up their noncompliance with their overtime compensation obligations. The report of the special master meticulously sets forth the testimonial and documentary source of each of these findings.

As to Defendants' argument that the special master erred in relying on a representative sample of employee testimony and records that was too small given the size of the entire employee population,[1] the Court finds that this argument lacks merit. The special master cited to documentary and testimonial evidence which established overtime violations for 365 employees.[2] Thus, even assuming the population size is 4,700 and not 956 (the number of employees actually at issue in this case), the magistrate was still utilizing a 7.8% sample size which is not contrary to the law cited by the Defendants. *See Reich v. Southern Md. Hospital,* 43 F.3d 949, 951 (4th Cir.1995) (1.6%). Accordingly, the Court finds that the special master's sample size was sufficiently robust to satisfy existing legal precedent. Based on this record, the Court can find no clear error in the special master's conclusion that there existed a pattern and practice of overtime violations by the Defendants.

## II. "EMPLOYEES" V. "INDEPENDENT CONTRACTORS"

█] Defendants object to Special Master Bartlett's finding that of the 956 individuals involved, those deemed to be "subcontractors" by the Defendants were nevertheless "employees" as defined by the FLSA, and were thus entitled to back pay for overtime. Defendants contend that the evidence before the special master was insufficient to support this finding.[3]

As stated, this Court reviews the special master's findings of fact for clear error. In evaluating the master's findings due regard must be given to the ability of the master to assess the credibility of the witnesses, *see* 9A Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2614 (2d ed.1994) (citing *Bennerson v. Joseph,* 583 F.2d 633 (3d Cir.1978)), and a master's factual findings should stand absent clear error even if the Court thinks they are against the preponderance of the evidence. *See id.* (citing cases). In the present case, the Court finds that the special master, in using the "economic reality" test, used the correct legal standard to determine whether the individuals in question were employees under the FLSA. *See Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1058–59 (2d Cir.1988). In making his findings, the special master considered testimony: (1) indicating a high degree of control by the Defendants' supervisors over the individuals in question; (2) indicating that the individuals in question had little opportunity for profit and loss based on the nature of their pay agreements with the Defendants; (3) indicating that the individuals in question had no personal investment in the construction projects in question; (4) indicating that the individuals in question did not exhibit any business-like or entrepreneurial skills associated with being an independent

---

1. The Defendants contend that the sample used constitutes only .89% of the entire employee population (41 of 4,700) of employees which is well below the lowest percentage found to be adequate thus far in a representative testimony case.

2. The Defendants fault the special master for relying on documentary evidence which they contend is subjective and speculative. The Court disagrees and can find no clear error with the special master's factual conclusions drawn from the Defendants' employees' pay records.

3. Specifically, Defendants argue, as they did previously in front of the special master, that their expert witness was more persuasive than the Plaintiff's, and that there was evidence in the record which would support a finding that the 285 at issue were actually independent contractors under the "economic reality" test.

contractor; (5) indicating that the individuals in question had long standing work relationships with the Defendants working consecutively at difference construction projects in different parts of the country; (6) indicating that the individuals in question in many cases worked side by side with paid "employees" performing identical type of work that was integral to the Defendants business; and (7) indicating that the Defendants' view of the "independent contractor" status was illusory based on their arbitrary assignment of "subcontractor" status to different employees in different situations. *See Brock,* 840 F.2d at 1059–61. Clearly, there is ample evidence in the record indicating that the individuals in question were "employees" rather than subcontractors under the economic reality test. Accordingly, the Court can find no clear error with the master's factual findings in this regard.

## III. ADMISSION OF EXHIBITS 1 AND 1A

 During the hearing in this matter, the special master admitted Plaintiff's exhibit 1 and 1A into evidence. Exhibit 1 purports to be a summary of the Plaintiff's expert's calculations based on the contents of exhibit 1A. Exhibit 1A purports to be a summary of Defendants' payroll records. Defendants argue that the special master made an error of law by allowing the admission of these two exhibits into evidence and by relying on them in making his factual findings. Admission of summary evidence lies with in the discretion of the trial court. *See U.S. v. Koskerides,* 877 F.2d 1129, 1134 (2d Cir.1989) (citing *U.S. v. Pinto,* 850 F.2d 927, 935 (2d Cir.1988)). Accordingly, the Court will not overrule the special master's admission of the evidence absent abuse of discretion. *See Minnesota Min. and Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.,* No. Civ. 4–86–359, 1991 WL 441901, at *3 (D.Minn. Apr.30, 1991).

### A. Exhibit 1

 Defendants contend that the special master erred in admitting exhibit 1 as an aid to the court because it is based on the speculative assumptions and conclusions of the Plaintiff's expert witness, and it is based on impermissible hearsay. However, the Defendants concede that the special master only admitted Exhibit 1 as an aid. It is axiomatic that summaries that are used as aids are not evidence themselves, but are tools designed to assist the trier of fact in understanding complex testimony. *See* 6 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 1006.08[4] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed.1997). Given the substantial legal experience of the trier of fact in this case there is no danger that Master Bartlett would be confused or mislead by the admission of exhibit 1A as an aid. Accordingly, the Court finds no abuse of discretion.

### B. Exhibit 1A

 The Defendants object to the admission of exhibit 1A arguing that: (1) exhibit 1A should not have been admitted as independent evidence because the underlying documents it was based on were not introduced into evidence; (2) exhibit 1A should not have been admitted as a Rule 1006 summary of the Defendants' records because it was replete with errors; and (3) exhibit 1A should not have been admitted because the necessary foundation testimony was not laid.

Defendants' first contention that a Rule 1006 summary may not be admitted into evidence without admitting the summarized documents lacks merit. All Rule 1006 requires is that the original or duplicate documents upon which the summary is based are independently admissible, and are made available to the other parties for examination or copying. *See* Fed.R.Evid. 1006. The rule does not require that the originals be admitted into evidence, but only indicates that the court may in its discretion order that the documents be produced in court. *See id.* Accordingly, it was not an error to admit exhibit 1A absent admission of the underlying documents it summarized. *See U.S. for Use and Benefit of Evergreen Pipeline Const. Co., Inc. v. Merritt Meridian Const. Corp.,* 95 F.3d 153, 163 (2d Cir.1996).

 Defendants second two objections to the admission of exhibit 1A are based on foundation. Proper foundation for summary evidence requires that summary charts fairly

represent and summarize the evidence on which they are based. *See Koskerides,* 877 F.2d at 1134 (citing *U.S. v. O'Connor,* 237 F.2d 466, 475 (2d Cir.1956)). Plaintiff's expert created the summary at issue from the various payroll records, check registers, disbursement journals, purchase journals, time cards, expense receipts, W–2's, 1099's, and general ledgers provided by the Defendants for the 956 employees of the Defendants for the period at issue. Plaintiff's exhibit 1A purports to be a summary of the information contained in these records that is relevant to determining the amount of back wages owed to those employees. The special master heard extensive testimony on the method and manner in which the Plaintiff's expert compiled and presented the summary of the Defendants' payroll records which would become Plaintiff's exhibit 1A. The special master also heard testimony from Plaintiff's witness that the error rate on Plaintiff's exhibit 1A was probably less than 1%. The Defendant's cross-examined these witnesses extensively on this topic and also presented testimony of their own expert, William Jennings, who identified several specific mathematical errors and errors of omission in exhibit 1A. Mr. Jennings also opined that the error rate in exhibit 1A was probably around 50%. While the special master did allow the admission of exhibit 1A into evidence, he did so while specifically taking into consideration the errors identified by the Defendants. Based on this factual record, the Court can find no abuse of discretion in the admission of exhibit 1A into evidence.

## IV. AWARD OF DAMAGES TO UNIDENTIFIED EMPLOYEES

In his report, the special master found the Defendants liable for violating the provisions of the FLSA as to 105 unidentified employees classified as independent contractors on two of the Defendants' construction projects in Virginia Beach, Virginia. Defendants object to this finding arguing that the evidence was insufficient to make such a finding. The Court finds, however, that the special master made fair and reasonable inferences concerning the number, length of employment, and pay rate for those unidentified employees and can find no clear error in his factual findings.

## V. AWARD OF PREJUDGMENT INTEREST

Defendants' final objection is to the failure of the special master to toll the accrual of prejudgment interest based on the delays in the litigation caused by the Plaintiff. Defendants contend that there have been inordinate and unreasonable delays in this case which were not caused by the Defendants. Defendants argue that it would be inequitable to charge them prejudgment interest on their liability during those periods of delay.

While it is true that a court may deny pre-judgment interest where it finds dilatory conduct or wrongdoing on the part of a plaintiff, *see Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 145 (2d Cir.1993); *Lodges 743 and 1746, Intern. Ass'n of Machinists and Aerospace v. United Aircraft Corp.,* 534 F.2d 422, 447 (2d Cir.1975), prejudgment interest generally should be included in any back pay award under the FLSA. *See Donovan v. Sovereign Security Ltd.,* 726 F.2d 55, 57 (2d Cir.1984). As Special Master Bartlett found in his report, prejudgment interest serves the goal of making whole the employees who have been deprived of rightful wages, and it also serves to divest the errant employer of the competitive advantage it gained over law-abiding businesses by not properly paying its employers. *See id.* Even though the DOL may have been lethargic in prosecution of this action, the goal of making the employees whole is not served by reducing the interest. Accordingly, and in light of the further finding that the Defendants' conduct was intentional and deceptive, the Court finds no clear error in failing to toll the award of prejudgment interest.

## VI. FAILURE TO COMPOUND THE INTEREST DAILY

Plaintiff objects to the special master's use of the simple interest formula in calculating the interest in this case and argues that the interest should be compounded daily. The Court finds, as did the special master, that there is no statutory or common

law precedent for compounding interest daily on awards for back wages in FLSA cases. On the contrary, virtually all the relevant precedent is either silent on the method of computation, which generally indicates simple interest, or explicitly specifies a simple interest formula. *See Brennan v. Western Union Telegraph Co.*, 561 F.2d 477, 479 (3d Cir.1977); *Hodgson v. American Can Co.*, 440 F.2d 916, 922 (8th Cir.1971); *Reich v. Cole Enterprises, Inc.*, 901 F.Supp. 255, 260 (S.D.Ohio 1993); *Secretary of Labor v. Tony and Susan Alamo Found.*, 783 F.Supp. 405, 411 (W.D.Ark.1991); *McLaughlin v. Stineco, Inc.*, 697 F.Supp. 436, 452 (M.D.Fla.1988); *Marshall v. Johnson*, No. A3–75–111, 1977 WL 1773, at *3 (D.N.D. Aug. 19, 1977)); *Usery v. Johnson*, 436 F.Supp. 35, 44 (D.N.D.1977); *Brennan v. Sterling Seal Co. Inc.*, 363 F.Supp. 1230, 1234 (Aug. 8, 1973). Accordingly, The Court finds that the special master did not err by directing interest to be computed per annum rather than compounded daily.

## VII. FAILURE TO AWARD ATTORNEY'S FEES

 In his report, the special master awarded the Secretary costs but not attorney's fees. The special master found no precedent for allowing the Secretary attorney's fees. The Plaintiff objects to this finding.

The FLSA provides no statutory mechanism for the recovery of attorney's fees in an action brought pursuant to 29 U.S.C. § 217. Further, by explicitly providing for the recovery of attorney's fees in action brought by individual employees under 29 U.S.C. § 216, Congress has demonstrated that it probably did not intend for the recovery of fees by the Secretary in § 217 actions. In her objections, the Plaintiff cites several cases where district courts have granted attorney's fees to the government in such actions. *See, e.g., Reich v. Shiloh True Light Church of Christ*, 895 F.Supp. 799, 819–20 (W.D.N.C.1995). However, the cases cited by the Secretary identify no authority nor provide any analysis for their award of attorney's fees. Furthermore, the vast majority of cases do not mention attorney's fees when granting relief un-

der § 217 of the FLSA. In light of the lack of a statutory basis or clear precedent, the Court finds that the special master did not err by refusing to grant the Plaintiff attorney's fees.

## VIII. SUBMISSION OF PAYMENT SCHEDULES

 In his report, the special master directed the parties to file proposed payment schedules with the court in order to manage the financial burden on the Plaintiff. The Plaintiff argues that the Special Master exceeded his authority, as set forth in his appointment Order, by so directing.

The Court finds that arranging for a payment schedule for back wage damages awards is a common practice in these types of FLSA actions. *See, e.g., Reich v. New Mt. Pleasant Bakery, Inc.*, 89–CV–581, 1993 WL 372270, at *6 (N.D.N.Y. Sept. 13, 1993). Furthermore, this Court did direct the special master to "do all acts and take all measures necessary or proper for the efficient performance of his duties under the order." *See Reich v. Davis Acoustical Corp.*, 79–CV–53, at 6 (N.D.N.Y. Aug. 16, 1995). As such, the Court finds that the Plaintiff's final objection lacks merit and that the special master did not exceed his authority in ordering the submission of payment schedules.

### Conclusion

Having reviewed the proposed findings of fact and conclusions of law, the parties' objections and arguments, and the applicable law, it is hereby

ORDERED that Defendants' motion for substitution of counsel is GRANTED; and it is further

ORDERED that the proposed Findings of Fact and Conclusions of Law filed by Special Master Richard J. Bartlett in this action on December 3, 1997, and the relief set forth therein, is ACCEPTED in its entirety; and it is further

ORDERED that Defendants pay a total fine in the amount of $1,318,648.93, which is comprised of $1,063,559.54 in back wages to identified employees and $225,089.93 in back wages to unidentified employees, plus pre-

138

judgment interest, calculated as simple interest at the adjusted prime rate.

**IT IS SO ORDERED.**