**Louis A. VICIEDO, et al., Plaintiffs,**

v.

**NEW HORIZONS COMPUTER LEARNING CENTER OF COLUMBUS, LTD., Defendant.**

**No. 01–CV–280.**

United States District Court,
S.D. Ohio,
Eastern Division.

Feb. 26, 2003.

888

John William Ferron, Rebekah Stasha Sinnott, Ferron & Associates, Columbus, OH, for Plaintiffs.

Steven Walter Tigges, Bradley Thomas Ferrell, Zeiger & Carpenter, Columbus, OH, Louis P. Britt, III, David P. Knox, Ford & Harrison, Memphis, TN, for Defendant.

## OPINION AND ORDER

MARBLEY, District Judge.

### I. INTRODUCTION

This matter is before the Court on the Defendant's Motion for Summary Judgment, filed on June 24, 2002. In its Motion, the Defendant seeks summary judgment on all of the Plaintiffs' claims. Jurisdiction is proper under 28 U.S.C. § 1331.

For the following reasons, the Court **GRANTS** the Defendant's Motion for Summary Judgment in part and **DENIES** the Defendant's Motion in part.

### II. BACKGROUND

#### A. Facts Giving Rise to the Complaint

The Defendant, New Horizons Computer Learning Center of Columbus, Ltd. ("NHC"), is a franchise of New Horizons Computer Learning Centers, Inc. ("New Horizons Worldwide" or "New Horizons"). NHC provides computer training for various computer software programs and systems, including Microsoft, Novell, and Cisco. The company offers classroom training at its offices in Dublin, Ohio, as well as "e-learning," which allows customers to complete online courses. Additionally, on occasion, NHC provides training at the customer's business site. Through these classes, NHC provides training on a range of computer programs, from basic programs such as Windows and Microsoft Office to extremely complex network systems used by information technology ("IT") professionals.

Each of the fifteen Plaintiffs in this matter was employed by NHC as an "account executive" at NHC's Dublin, Ohio location between 1998 and 2001. As account executives, the Plaintiffs were responsible for contacting customers and potential customers to sell NHC's computer software training courses. The Plaintiffs primarily

sold computer training courses to other businesses, although they also sold some classes to members of the general public.

As part of their daily routine, the Plaintiffs were required to report for work between 7:30 a.m. and 7:45 a.m. every morning. By 8:00 a.m. they were required to be making calls to potential customers. They were required to be on the phone every day from 8:00 a.m. until 12:00 p.m., and then from 1:00 p.m. until 5:00 p.m. They were prohibited from doing any paperwork, preparing prospect lists, or completing any other work activity during their telephone calling hours. Thus, beginning at 5:00 p.m. each day, the Plaintiffs were required to remain at work while they completed paperwork for the day, prepared for the next day of calls, and reviewed their daily sales. Often, the Plaintiffs did not leave work until 6:00 or 6:30 p.m.

In addition to the foregoing regular work hours, the Plaintiffs were required by NHC to attend working lunch training sessions twice per month. They were also required to attend "Career Nights" and "Tech Nights" twice per month.

The Plaintiffs allege that their work schedule often required them to work more than forty hours per week. The Defendant, however, never paid them overtime compensation. The Plaintiffs assert that they were entitled to such overtime compensation under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA").

## B. Department of Labor Investigations of New Horizons

New Horizons Worldwide has franchises and corporate owned stores throughout the United States, including Santa Ana, California and Chicago, Illinois. In 1995 and 1996, the United States Department of Labor ("DOL"), Wage and Hour Division, conducted an investigation of New Horizons Worldwide's Santa Ana business to determine whether account executives were required to be paid overtime wages under the FLSA, or whether they were exempt from the statute's requirements. A Mr. Leung headed the investigation for the DOL, and Bruce May, who claims to have been intimately involved in the investigation, served as counsel for New Horizons Worldwide.

According to an affidavit filed by Mr. May, after a thorough investigation, the DOL determined that New Horizons' account executives were exempt from the FLSA. Specifically, Mr. May states that the Department found that the account executives fell within the exemption under 29 U.S.C. § 207(i), which exempts an "employee of a retail or service establishment" if certain requirements are met. Mr. Leung reported his conclusion regarding the account executives to Mr. May.

News of the DOL's findings was disseminated to the various New Horizons franchises, including NHC, which had recently opened for business. Based on its belief that the account executive positions at NHC and the Santa Ana office are virtually identical, NHC states that it relied on the DOL's findings as a basis for not paying overtime wages to its account executives.

After the Santa Ana investigation, the DOL initiated an investigation of New Horizons Worldwide's Chicago office. The Defendant claims that the investigator in charge in Chicago, Annette Prindle, deferred to the findings from Santa Ana, and concluded the Chicago investigation without making any new findings.

## C. Procedural History

On March 28, 2001, Plaintiff Louis Viciedo filed a Complaint against the Defendant seeking redress for Defendant's alleged

failure to pay overtime wages due to Mr. Viciedo. Then, on May 23, 2001, Mr. Viciedo filed a First Amended Complaint Asserting Class Action Claims Pursuant to 29 U.S.C. § 216(B) on behalf of himself and "[a]ll persons who were employed as account executives with Defendant in its Ohio offices at any time after March 28, 1998." In his First Amended Complaint, the Plaintiff asserts the following claims against the Defendant: (1) Violation of Federal Minimum Wage and Overtime Pay Laws, 29 U.S.C. § 201 *et seq.;* and (2) Violation of Ohio Minimum Wage and Overtime Pay Laws, Ohio Rev.Code section 4111 *et seq.*

On July 27, 2001, Plaintiff James Harness filed his Consent to Opt In to the Class Action. On July 30, 2001, Mr. Viciedo filed a Motion for Authority to Notify Putative Class Members. On December 3, 2001, this Court issued an Opinion and Order granting Plaintiffs Viciedo and Harness authority to notify the putative class members of the pending action. On February 1, 2002, the Plaintiffs filed a Notice of Filing of Consent Forms of New Parties Plaintiff, naming thirteen new Parties Plaintiff.[1] This matter is now before the Court on the Defendant's Motion for Summary Judgment.

### III. STANDARD OF REVIEW

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1388–89 (6th Cir.1993). In response, the non-moving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.,* 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The non-moving party, however, "may not rest upon its mere allegations ... but ... must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *see Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir.1994). Furthermore, the mere existence of a scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the

---

1. The thirteen individuals who opted into the action on February 1, 2002 are Karen Angus, Kennard Brown, Diane Ciprian, Lorraine Ferret, Donald Gesick, Grant Guilkey, Eric Heberle, Jason Hoane, Roderick Ike, Tyson Lemon, Andrew Meyer, Christopher Peirano, and Barbara (Phillips) Shafer.

jury could reasonably find for the non-moving party. *Anderson,* 477 U.S. at 251, 106 S.Ct. 2505; *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995).

## IV.  ANALYSIS

### A.  Exemption from Overtime Wage Requirements of FLSA

The Plaintiffs claim that the Defendant violated the FLSA by failing to pay them overtime wages.  The FLSA prohibits employers from employing any worker for a workweek longer than forty hours unless the employee receives compensation at a rate of one and one-half times his regular rate of pay for each hour worked in excess of forty hours. *See* 29 U.S.C. § 207(a)(1). Certain employees, however, are exempt from this overtime wage requirement.  In particular, the FLSA provides, in pertinent part:

> No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.

29 U.S.C. § 207(i) ("retail-service exemption").  The Defendant argues that it is entitled to summary judgment because the Plaintiffs fall within the retail-service exemption to the overtime wage requirement.  The Plaintiffs, however, assert that the exemption does not apply.

**2.**  The regulations acknowledge that the term "resale" refers to the act of "selling again."

### 1.  Retail or Service Establishment

To qualify for the retail-service exemption to the overtime wage requirement, the employee must be an employee of a retail or service establishment.  The regulations promulgated by the Secretary of Labor define a "retail or service establishment" as "an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry."  29 C.F.R. § 779.411. For purposes of determining whether certain goods or services are sold for "resale," the term "sale"[2] means "any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition."  29 C.F.R. § 779.331. Pursuant to this definition, sales of goods or services for distribution by the purchaser for business purposes are sales for resale under the "other disposition" language of the definition of "sale," even if the goods or services are distributed by the purchaser at no cost to the ultimate recipient.  *Id.* In determining whether a particular business is a retail or service establishment, the Court must consider not only these definitions, but also whether the business possesses certain attributes that are generally associated with retail or service establishments:

> Typically a retail or service establishment is one which sells goods or services to the general public.  It serves the everyday needs of the community in which it is located.  The retail or service establishment performs a function in the business organization of the Nation which is at the very end of the stream of distribution, disposing in small quantities of the products and skills of such

29 C.F.R. § 779.331.

organization and does not take part in the manufacturing process.

29 C.F.R. § 779.318(a).

■ The Court finds that NHC is a retail or service establishment under this regulatory criteria. First, more than seventy-five percent of NHC's annual dollar volume of sales results from the sale of goods or services that are not for resale. Indeed, as NHC is in the business of providing computer training and software to the general public for use and consumption in their daily personal and business pursuits, NHC is "at the very end of the stream of distribution" of computer training.

The Court rejects the position, set forth by the Plaintiffs, that NHC performs a business function that is "midstream" in the chain of commerce. The Plaintiffs argue that NHC performs a business function that is "midstream" in the chain of commerce because the majority of NHC's consumers are other businesses' employees who use the skills they learn from NHC in their own businesses, or return to the workplace and train others. The Plaintiffs contend that, although these specialized computer skills generally are not resold to the businesses' own customers, the economic reality is that the costs the businesses incur to have their employees trained by NHC are passed on to their customers as part of the businesses' overhead. Thus, argue the Plaintiffs, the sale of NHC's service to other businesses constitutes a sale for resale. *See Mitchell v. Sherry Corine Corp.*, 264 F.2d 831, 835 (4th Cir.1959) (finding that the sale of meals to an airline was a sale "for resale" even though the meals were distributed to passengers at no cost because the economic reality was that the cost of the meals was reflected in the price that passengers paid for tickets).

The Court finds that, although some of NHC's customers probably return to the workplace to teach fellow employees, such passing along of training does not constitute a "resale," as no money or equivalent method of compensation is exchanged for the service. Furthermore, assuming that at least some of NHC's customers pass along the cost of their services to their own consumers, this passing of cost does not constitute a "resale" of the computer training itself. While the Plaintiffs rely on *Mitchell*, that case is distinguishable. In *Mitchell*, the meals that were sold to the airlines were then "resold" to the airlines' passengers, in that they were given to passengers after the passengers had paid the cost of travel, and included in that cost of travel was the price of the meal. Here, however, the Plaintiffs have presented no evidence that the actual computer training sold by NHC to its customers is ever passed along in any form to consumers. The fact that NHC's customers use their training as administrative support in businesses that produce other goods or services, and then pass along all overhead costs to consumers, is too tenuous a connection to constitute a "resale" of the computer services themselves.

Second, NHC's business serves the "everyday needs" of the community. The Court recognizes some of NHC's business is directed at providing specialized training to IT professionals on complex computer systems. Much of NHC's business, however, is aimed at teaching consumers how to use basic computer programs in their daily professional and personal pursuits. Moreover, regardless of the level of complexity of the training, in today's world, any type of computer training serves the everyday needs of the community. *See Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 801 (9th Cir.2001) (Berzon, J., concurring in part and dissenting in part) (recognizing that "[n]o one can realis-

tically expect to be successful in our world of mega-information without being able to use a computer") (quoting Carl W. Battle, *Smart Maneuvers: Taking Control of Your Career and Personal Success in the Information Age,* at 106 (1994)); *Bryant v. Muth,* 994 F.2d 1082, 1088 (4th Cir.1993) ("Society is becoming increasingly dependent upon computers in virtually every aspect of daily life."); *Yeager v. Drug Enforcement Admin.,* 678 F.2d 315, 320 (D.C.Cir.1982) ("It cannot be gainsaid that computers have become an integral part of the functioning of our society.").

Third, NHC is recognized in the computer industry as retail in nature. The Court acknowledges that NHC's recognition within the computer industry as a retail business is not determinative of whether NHC's business is, in fact, retail in nature. *See* 29 C.F.R. § 779.324 (citations omitted). Nonetheless, this factor may be considered along with the rest of the Court's analysis.

■ Finally, the Court rejects the position, adopted by the Plaintiffs, that NHC cannot be a retail or service establishment because it is a school, and the service or product is supplies is education. *See* 29 C.F.R. § 779.317 (including in a list of non-retail establishments "Schools (except schools for mentally or physically handicapped or gifted children)"). The Ninth Circuit has recognized that schools can be retail or service establishments under the FLSA if the education they provide serves the everyday needs of the community. *See Martin v. Refrigeration Sch., Inc.,* 968 F.2d 3, 7–8 (9th Cir.1992) (rejecting the Secretary of Labor's determination that no schools other than schools for gifted or mentally or physically handicapped children qualify as retail establishments). In *Martin,* the Ninth Circuit rejected the Secretary of Labor's distinction between schools for the gifted or mentally or physi-

cally handicapped, which the Secretary characterized as retail establishments, and all other schools, which the Secretary designated non-retail establishments. The court found this distinction to be irrational in light of the fact that retail establishments are defined as serving the everyday needs of the community. *Id.* at 7 (finding that schools for all children, not just schools for gifted or handicapped children, serve the everyday needs of the community). The court went on to recognize that many schools may qualify as retail or service establishments, but rejected the proposition that the schools in that case, refrigerator repair schools, were retail or service establishments because such schools did not serve the everyday needs of the community. *Id.* at 8–9. Unlike refrigerator repair schools, however, schools that educate on the use of computer programs serve the everyday needs of the community. Hence, in light of *Martin's* recognition that schools that serve the everyday needs of the community are retail or service establishments, NHC qualifies as a retail or service establishment under the FLSA.

Therefore, Court finds that the Plaintiffs have failed to raise a genuine issue of material fact with respect to the first element of the exemption because NHC is a "retail or service establishment" under 29 U.S.C. § 207(i).

### 2. Plaintiffs' Regular Rate of Pay

Second, to qualify for the overtime wage exemption, the employee's regular rate of pay must be more than one and one-half times the minimum wage rate. The regulations promulgated by the Secretary of Labor explain that the employee's regular rate of pay is to be determined as follows:

> The meaning of the "regular rate" of pay under the Act is ... a rate per hour, computed for the particular workweek by a mathematical computation in which hours worked are divided into a

straight-time earnings for such hours to obtain the statutory regular rate.... The employee's "regular rate" of pay must be computed ... on the basis of his hours of work in that particular workweek and the employee's compensation attributable to such hours. The hourly rate thus obtained must be compared with the applicable minimum rate of pay of the particular employee under the provisions of section 6 of the Act.

29 C.F.R. § 779.419(b).

The Plaintiffs were employed by NHC between 1998 and 2001. Thus, the applicable minimum wage is $5.15 per hour, which has been the minimum wage since September 1, 1997. One and one-half times $5.15 equals $7.73. Thus, to qualify for the exemption, the Plaintiffs' regular rate of pay must have exceeded $7.73 per hour for each workweek in which they assert they were entitled to overtime wages.

■ NHC contends that, according to its calculations, the regular rate of pay for each of the Plaintiffs exceeds $7.73 per hour. NHC concedes, however, that Plaintiffs Kennard Brown and Louis Viciedo worked some weeks during which they earned less than one and one-half times the minimum wage.[3] In addition, the Plaintiffs have presented evidence that Jason Hoane was paid less than one and one-half times the minimum wage during one two-week period.[4] NHC argues that the few weeks during which these Plaintiffs earned less than one and one-half times

the minimum wage should not affect the Court's application of the retail-service exemption to their employment. NHC bases its argument on the fact that Plaintiffs Brown and Viciedo earned an average hourly rate that substantially exceeds one and one-half times the minimum wage when their regular rate of pay is calculated by dividing their total compensation earned by the total number of hours worked, rather than by calculating the regular rate of pay on a week-by-week basis.[5]

Most of the Plaintiffs satisfy this second requirement of the retail-service exemption because their regular rate of pay exceeded one and one-half times the minimum wage. The Defendant has failed to provide any support, however, for the proposition that the retail-service exemption can apply to Plaintiffs Brown, Viciedo, and Hoane for the weeks during which they earned less than one and one-half times the minimum wage. Indeed, a determination that these Plaintiffs earned a regular rate of pay that exceeded one and one-half times the minimum wage based on their total hours worked and total compensation earned would be in derogation of the DOL's specific finding that the regular rate of pay is to be calculated on the basis of hours worked and compensation earned in a particular workweek.

Therefore, the Court finds that the Plaintiffs have failed to raise a genuine issue of material fact with respect to the

---

3. Plaintiff Brown earned $7.42 per hour during one week. Plaintiff Viciedo earned less than the required $7.73 during five works. During each of those five weeks, Mr. Viciedo earned between $7.28 per hour and $7.72 per hour.

4. During the pay period from June 1, 1999 to June 15, 1999, Plaintiff Hoane was paid a total of $426.30. Assuming that Mr. Hoane worked at least eighty hours during those two weeks, however, he would have received at

least $618.00 if he had been paid at a rate of one and one-half times the minimum wage.

5. When the calculations are performed in this manner rather than in the more complex manner necessary to determine the regular rate of pay on a week-by-week basis, it results in a finding that Mr. Brown earned an average of $19.15 per hour, and Mr. Viciedo earned an average of $15.54 per hour.

second element of the retail-service exemption, except with respect to the weeks during which Plaintiffs Brown, Viciedo, and Hoane earned less than one and one-half times the minimum wage.

### 3. Commissions as Compensation

Third, to qualify for the retail-service exemption to the overtime wage requirement, more than half of the employee's compensation for a representative period must represent commissions on goods or services.

The DOL's regulations recognize that employees of retail or service establishments are usually compensated in any one of five ways:

(1) Straight salary or hourly rate: Under this method of compensation the employee receives a stipulated sum paid weekly, biweekly, semimonthly, or monthly or a fixed amount for each hour of work.

(2) Salary plus commission: Under this method of compensation the employee receives a commission on all sales in addition to a base salary (see paragraph (a)(1) of this section).

(3) Quota bonus: This method of compensation is similar to paragraph (a)(2) of this section except that the commission payment is paid on sales over and above a predetermined sales quota.

(4) Straight commission without advances: Under this method of compensation the employee is paid a flat percentage on each dollar of sales he makes.

(5) Straight commission with "advances," "guarantees," or "draws." This method of compensation is similar to paragraph (a)(4) of this section except that the employee is paid a fixed weekly, biweekly, semimonthly, or monthly "advance," "guarantee," or "draw." At periodic intervals a settlement is made at which time the payments already made are supplemented by any additional amount by which his commission earnings exceed the amounts previously paid. 29 C.F.R. § 779.413(a). By definition, all of these compensation plans, except for the "straight salary or hourly rate," may qualify as "bona fide commission plans" under § 207(i). In contrast, a formula for computing commissions pursuant to which the employee "in fact, always or almost always earns the same fixed amount of compensation for each workweek (as would be the case where the computed commissions seldom or never equal or exceed the amount of the draw or guarantee)" is not a bona fide commission payment plan. 29 C.F.R. § 779.416(c).

■ NHC has two methods of compensation for account executives. First, under the "Level I" plan, the account executive is paid a predetermined amount of money on a bi-weekly basis, which NHC refers to as a "non-recoverable draw." The account executive is also paid a commission that equals five percent of the amount collected from sales. If the account executive collects less than $10,000, his non-recoverable draw is reduced by the amount of the five percent commission, so that the account executive's total compensation does not exceed the amount of the non-recoverable draw. If, on the other hand, the account executive collects more than $10,000, then his five percent commission is added to the non-recoverable draw.[6]

---

6.  The following is an example of the Level I compensation method:

| Collections Less Than $10,000 | Collections of $10,000 or More |
|---|---|
| Non–Recoverable Draw = $2,000 | Non–Recoverable Draw = $2,000 |
| Monthly Collections = $4,000 | Monthly Collections = $14,000 |
| Commission = $200 (.05 × 4,000) | Commission = $700 (.05 × 14,000) |

Under the second compensation plan available to NHC account executives, the "Level II" plan, the account executive does not receive any non-recoverable draw. Rather, his compensation is based entirely on a percentage of the amount the account executive collects from sales on a monthly basis. The commission percentage increases incrementally as the account executive's collections increase.

The parties do not dispute that the Level II compensation plan constitutes a "bona fide compensation plan" that would fall under the "straight commission without advances" mode of compensation, set forth in 29 C.F.R. § 779.413(a)(4). The parties vigorously dispute, however, how the Level I plan should be characterized. The Defendant contends that the Level I plan is an example of "straight commission with 'advances,' 'guarantees,' or 'draws,'" as described in 29 C.F.R. § 779.413(a)(5). The Plaintiffs, however, argue that the Level I plan is a salary plus commission scheme, as described in § 779.413(a)(2).

This case is strikingly similar to *Donovan v. Highway Oil, Inc.*, 1986 WL 11266 (D.Kan. July 18, 1986). In *Donovan*, managers of a gasoline service station brought suit for overtime wages allegedly due under the FLSA. The managers in that case were paid a set commission for selling a threshold amount of gasoline, and then a small commission for each additional gallon of gasoline sold above the threshold amount. For example, during one year, the managers received a commission of $1075 for selling a threshold of 65,000 gallons of gasoline, plus a commission of $.004 for each additional gallon sold. *Id.* at *1. In examining that compensation system,

the *Donovan* court concluded that it represented a hybrid of the quota bonus system and the salary plus commission system. *Id.* at *4.

Like the court in *Donovan*, this Court finds that the Level I payment plan constitutes a hybrid of a quota bonus plan and a salary plus commission plan. Under a quota bonus plan, employees are paid commissions on sales over and above a predetermined sales quota. The Level I plan possesses characteristics similar to a quota bonus plan in that account executives' commissions are added to the non-recoverable draw if they bring in money over and above a predetermined sales quota of $10,000. The Level I plan differs from a quota bonus plan, however, in that account executives are paid the full amount of the non-recoverable draw even if they do not bring in over $10,000. *See Donovan*, 1986 WL 11266, at *4 (recognizing that the compensation plan at issue in that case possessed some qualities of a quota bonus system, but that it was not "strictly such a plan because a salary is paid to the managers ... regardless of the number of gallons they pump").

The Level I plan also possesses qualities that typify a salary plus commission plan. Under the usual salary plus commission plan, the employee receives a commission on all sales in addition to a base salary. Similarly, the account executives receive a five percent commission on all sales in addition to a base payment of the non-recoverable draw. The Level I plan differs from the typical plan, however, in that the "base salary" may be reduced if the account executives do not generate at least $10,000 in sales. In that sense, the draw,

Total Compensation = $2000 (1800 + 200)  Total Compensation = $2,700 (2000 + 700)
When the employee collects less than $10,000, he earns the five percent commission ($200 in the above example), but the amount of the commission is subtracted from the non-recoverable draw. As a result, the draw equals less than the predetermined $2000 ($1800 in the above example), and the employee's total compensation equals the reduced draw plus the commission, or $2000.

though similar to a salary, is not a true salary because it is dependent upon the account executive's bringing in a threshold amount of sales. *See id.* (finding that the compensation system had some qualities of a salary plus commission plan, but that it differed because the base salary depended upon reaching the required threshold).

Contrary to the Defendant's position, the Level I plan cannot be a straight commission with draw plan. The DOL's regulation explains that, under a straight commission with draw plan, the employee is paid a fixed draw on a regular basis, and then, at periodic intervals, "a settlement is made at which time the payments already made are supplemented by any additional amount by which his commission earnings exceed the amounts previously paid." 29 C.F.R. § 779.413(a)(5). Thus, § 779.413(a)(5) contemplates a scenario wherein the draw equals a portion of the commission that the employee is expected to earn. For example, in this case, account executives are paid a five percent commission. Assuming the non-recoverable draw equals $2000, a true draw under § 779.413(a)(5) means that NHC would anticipate that most account executives would bring in at least $40,000, thereby resulting in their five percent commission of $2000. Then, if the employee brought in more than $40,000, a settlement would take place to supplement the $2000 commission already paid through the draw.

The manner in which the Level I compensation plan is actually implemented differs from the scenario set forth above. The Level I plan resembles a true commission with draw plan because the account executives are paid the amount of the non-recoverable draw, for example, $2000, at regular intervals. Under the Level I plan, however, no periodic settlement takes place whereby draws are supplemented by the additional amount of commissions

earned. Rather, the account executives' entire five percent commission is added to the draw. For instance, if an employee brings in $40,000, he is paid $4000 (the $2000 draw plus the five percent—$2000—commission). Thus, the employee is paid the draw plus the full commission, even though the draw accounts for the full amount of the five percent commission. Hence, the draw does not represent a portion of the commissions earned, but, rather, represents a flat compensation rate that is added to the total amount of commissions earned. As such, NHC's non-recoverable draw functions much more like a salary than a true draw on commissions.

Regardless of whether the Level I plan constitutes a salary plus commission, a quota bonus plan, or a hybrid of both, the pre-determined compensation referred to by the Defendant as a "non-recoverable draw" does not represent commissions. To the contrary, in light of the way that compensation actually functions, it represents a salary. Therefore, this portion of the account executives' compensation cannot be taken into account when determining whether more than fifty percent of the Plaintiffs' earnings represent commission, as is required to qualify for the retail-service exemption. *See Donovan*, 1986 WL 11266, at *4 (recognizing that the "only true commission portion of the salaries appears to be those amounts over the threshold level"). Rather, the Court must examine only the true commissions earned by the Plaintiffs to determine whether that amount accounts for at least fifty percent of their total compensation.

With few exceptions, the Defendant has failed to demonstrate that any of the Plaintiffs received commission payments that amounted to more than fifty percent of their total compensation for any pay period. Indeed, the Plaintiffs have presented uncontroverted evidence based on the

payroll records of each Plaintiff that very few of them ever received close to fifty percent of their compensation in any pay period from commissions.[7]  Specifically, the evidence shows that Plaintiffs Angus, Brown, Ciprian, Gesick, Guilkey, Harness, Ike, Lemon, Meyers, Peirano, and Shafer never received more than fifty percent of their compensation from commissions. During one pay period, however, Plaintiff Ferret received fifty-six percent of her compensation from commissions. In addition, during six pay periods, Plaintiff Heberle received more than fifty percent of his compensation from commissions. Similarly, during six pay periods, Plaintiff Viciedo received at least fifty percent of his compensation from commissions. Finally, Plaintiff Hoane earned his compensation during one pay period entirely from commissions.[8]  Accordingly, the Court finds that none of the Plaintiffs who earned less than fifty percent of their compensation from commissions qualifies for the retail-service exemption.

Therefore, the Court **DENIES** the Defendant's Motion for Summary Judgment with respect to the FLSA claims of the following Plaintiffs, who do not meet all of the requirements necessary to fall within the retail-service exemption to the FLSA's overtime wage requirements: Angus, Brown, Ciprian, Gesick, Guilkey, Harness, Hoane, Ike, Lemon, Meyers, Peirano, and Shafer. The Court **GRANTS** the Defendant's Motion for Summary Judgment with respect to the claims of Plaintiffs

Ferret, Heberle, and Viciedo based on the pay periods during which they received more than fifty percent of their compensation from commissions.

### 4. Reporting Requirements

■ Finally, the Plaintiffs assert that, even if they have met the statutory elements of the retail-service exemption, the exemption cannot apply under these circumstances because the Defendant failed to comply with certain reporting requirements.  In particular, the Plaintiffs state that the Defendant is not entitled even to partial summary judgment because the Defendant failed to maintain the following records:

(1) The number of hours the Plaintiffs worked each day, as required by 29 C.F.R. § 516.2;

(2) The number of hours the Plaintiffs worked each week, as required by 29 C.F.R. § 516.2;

(3) The "representative period" for calculating commissions, as required by 29 C.F.R. § 516.16; and

(4) A symbol or letter in its records denoting that the Plaintiffs were regarded as section 7(i) exempt commissioned salespeople, as required by 29 C.F.R. § 516.16.

Although the Plaintiffs may be correct that the Defendant failed to comply with the DOL's recording requirements, such a failure would not result in a finding that the retail-service exemption is inapplicable.

7.  This evidence is set forth in the Plaintiffs' Motion for Leave, Instanter, to Supplement Further Their Evidence and Arguments in Opposition to Defendant's Motion for Summary Judgment, and the exhibits attached thereto. The Court hereby **GRANTS** said Motion for Leave.

8.  The pay period during which Plaintiff Hoane earned more than fifty percent of his compensation from commissions is the period

during which a question of fact exists with respect to whether Plaintiff Hoane was paid at a rate of one and one-half times the minimum wage.  Thus, although Plaintiff Hoane satisfies this third element of the retail-service exemption, a genuine issue of material fact remains with respect to whether he has satisfied one of the other elements necessary to qualify for the exemption.

Rather, this Court has determined that, when an employer fails to comply with the DOL's recording requirements, the Court should simply issue an injunction requiring the employer to comply with those requirements in the future. *Reich v. Cole Enter., Inc.*, 901 F.Supp. 255, 260 (S.D.Ohio 1993), *aff'd*, 62 F.3d 775 (6th Cir.1995); *see Brennan v. Valley Towing Co., Inc.*, 515 F.2d 100, 111–12 (9th Cir. 1975) (recognizing that, when the employer had failed to comply with the reporting requirements of 29 C.F.R. § 516.2, an order requiring prospective compliance was proper, but that additional sanctions for the past violation were not necessary).[9] Accordingly, even though the Defendant may have failed to comply with the DOL's recording requirements, that failure would not defeat the Defendant's Motion for Summary Judgment.[10]

### B. Ohio's Minimum Fair Wage Standards Act

In addition to claiming that the Defendant violated the FLSA, the Plaintiffs also allege that NHC violated Ohio's Minimum Fair Wage Standards Act, Ohio Rev.Code section 4111.01 *et seq.* That statute states, in pertinent part:

> An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the "Fair Labor Standards Act of 1938," ... 29 U.S.C.A. 207, 213, as amended.

Ohio Rev.Code section 4111.03(A). Pursuant to this provision, the Court's findings with respect to the Plaintiffs' FLSA claims apply equally to the Plaintiffs' claims brought under Ohio's Minimum Fair Wage Standards Act.

Therefore, the Court **DENIES** the Defendant's Motion for Summary Judgment with respect to the state law claims of the following Plaintiffs, who do not meet all of the elements of the retail-service exemption to the overtime wage requirements: Angus, Brown, Ciprian, Gesick, Guilkey, Harness, Hoane, Ike, Lemon, Meyers, Peirano, and Shafer. The Court **GRANTS** the Defendant's Motion for Summary Judgment with respect to the state law claims of Plaintiffs Ferret, Heberle, and Viciedo based on the pay periods during which they received more than fifty percent of their compensation from commissions.

### C. FLSA: Statute of Limitations

In addition to arguing that it is entitled to summary judgment because the Plaintiffs fall within the retail-service exemption, NHC also argues that it is entitled to summary judgment because the FLSA's statute of limitations bars some or all of the claims of certain Plaintiffs.

#### 1. Statutory Period

To determine whether the Plaintiffs' claims are barred by the statute of limitations, first, the Court must determine the applicable statutory period. Generally, FLSA claims are governed by a two-year statute of limitations. *See* 29 U.S.C. § 255(a). Such claims may be governed

9. In addition, should the Plaintiffs prove at trial that they are, in fact, entitled to overtime wages, the Defendant's failure to retain the required records will mean that the Court can rely on the employees' testimony to determine the number of hours for which back wages are owed. *Reich*, 901 F.Supp. at 260 (citations omitted).

10. At this point in the litigation, the Court makes no findings with respect to whether the Defendant violated the DOL's reporting requirements. Rather, the Court finds only that such a failure, even if proven by the Plaintiffs, would not result in a denial of summary judgment if the Plaintiffs qualify for the retail service exemption in all other respects.

by a three-year statute of limitations, however, where the statutory violation was "willful." *Id.*[11]

■ To establish willfulness, the plaintiff must demonstrate that the employer either knew or showed reckless disregard for whether its conduct was prohibited by the FLSA. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)). For example, the Sixth Circuit has found that an employer's violation was willful where the employer " 'had actual notice of the requirements of the FLSA by virtue of earlier violations, his agreement to pay unpaid overtime wages, and his assurance of future compliance with the FLSA.' " *Herman v. Palo Group Foster Home, Inc.*, 183 F.3d 468, 474 (6th Cir.1999) (quoting *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 967 (6th Cir.1991)) (citing *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1062 (2d Cir.1988)). A willful violation requires that the employer act at least recklessly; it is not enough that the employer acted unreasonably. *McLaughlin*, 486 U.S. at 135 n. 13, 108 S.Ct. 1677.

■ The Court finds that the Plaintiffs have raised a genuine issue of material fact with respect to whether the Defendant willfully violated the overtime wage requirements of the FLSA. In particular, the Plaintiffs have presented evidence indicating that, prior to the time any of the Plaintiffs was employed by NHC, NHC had knowledge that the non-recoverable

draw did not represent commissions and that, consequently, for an employee to fall within the section 7(i) exemption, he must earn at least fifty percent of his compensation in a representative period from actual commissions. This evidence comes in the form of a memorandum written by Bob McMillan, New Horizons' Chief Financial Officer, on September 26, 1997, which states, in relevant part, as follows:

Franchisees who rely on Section 7(i) must assure that their Account Executives earn at least (a) one and one half times the minimum wage for all hours worked, and (b) half their compensation in commissions during a representative period of not less than thirty days. During their initial months of employment, Account Executives normally will not earn enough commissions to satisfy this second requirement....

If Account Executives are paid a non-recoverable draw, the amount will vary from month to month because it is applied against the amount of commissions actually earned. (The reason why the draw is non-recoverable is to satisfy the requirement under Section 7(i) that the employee be guaranteed at least one and one-half times the minimum wage for all hours worked.) Commissions should be calculated every month from the start of employment, with non-recoverable draw making up the balance of the agreed compensation.

This language clearly indicates that the non-recoverable draw is not intended to represent commissions for purposes of the retail-service exemption, but instead

11. The statutory provision setting forth the statute of limitations states, in relevant part: Any action ... to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938 ... may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued[.] 29 U.S.C. § 255(a).

constitutes a relatively flat rate of compensation that is added to commissions. Because the Defendant received this memorandum in September 1997, the Plaintiffs have raised a genuine issue of material fact with respect to whether, at the time the Plaintiffs were employed by the Defendant, NHC knew that the non-recoverable draw did not represent commissions, and that at least half of the Plaintiffs' salary must come from actual commissions for the retail-service exemption to apply.

In addition, the Plaintiffs have asserted that representatives of NHC ordered them to fill out time sheets reflecting that they worked only eight hours per day, even if they had, in actuality, worked more. Thus, the Plaintiffs have raised a question of fact with respect to whether the Defendant required the Plaintiffs to fill out their time sheets in this manner in an effort to evade the overtime wage requirements.

The Court recognizes that the Defendant has presented evidence that NHC acted on its good faith, reasonable belief that the Plaintiffs were exempt from the FLSA overtime wage requirements. In particular, NHC has presented evidence that it based its position regarding overtime wages on the decision and representations of the DOL, following its investigation of the Santa Ana office, that New Horizons' account executives are exempt from the FLSA. The memorandum and other evidence presented by the Plaintiffs, however, raises a genuine issue of material fact with respect to what the Defendant actually knew and believed at the time that it employed the Plaintiffs.

Therefore, for the purposes of the Defendant's Motion for Summary Judgment, the Court applies a three-year statute of limitations to the Plaintiffs' FLSA claims.

## 2. Application of the Statutory Period to the Claims

In determining whether the three-year statute of limitations bars any of the Plaintiffs' claims, the Court must examine when the claims accrued and when the Plaintiffs filed their causes of action.

█ When a plaintiff alleges a violation of the FLSA based on a failure to pay overtime wages, each paycheck that fails to include wages for overtime constitutes a separate violation. Thus, a new cause of action accrues with the receipt of each paycheck. *Archer v. Sullivan County*, 129 F.3d 1263, 1997 WL 720406 at *2 (6th Cir.1997) (citing *Halferty v. Pulse Drug Co., Inc.*, 821 F.2d 261, 271 (5th Cir.), *modified on other grounds*, 826 F.2d 2 (5th Cir.1987)); *Knight v. Columbus*, 19 F.3d 579, 581 (11th Cir.1994). As such, even if an employer continuously fails to pay overtime wages during the course of employment, each paycheck constitutes a separate violation, and claims based on any paycheck that falls outside the statutory period are barred. As the Eleventh Circuit has explained:

> The term "continuing violation" ... implies that there is but one incessant violation and that the plaintiffs should be able to recover for the entire duration of the violation, without regard to the fact that it began outside the statute of limitations window. That is not the case. Instead of one on-going violation, this case involves a series of repeated violations of an identical nature. Because each violation gives rise to a new cause of action, each failure to pay overtime begins a new statute of limitations period as to that particular event.

*Knight*, 19 F.3d at 582.

The FLSA dictates the manner in which the Court is to determine the date on which a plaintiff filed his cause of action under that statute:

In determining when an action is commenced for the purposes of section 255 of this title, an action commenced ... under the Fair Labor Standards Act of 1938 ... shall be considered to be commenced on the date when the complaint is filed; except that in the case of a collective or class action instituted under the Fair Labor Standards Act of 1938 ... it shall be considered to be commenced in the case of any individual claimant—

(a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or

(b) if such written consent was not so filed or if his name did not so appear— on the subsequent date on which such written consent is filed in the court in which the action was commenced.

29 U.S.C. § 256.

Applying the foregoing rules regarding the date an action accrues and the date a claim is filed, the Court finds that the claims of two Plaintiffs are barred by the statute of limitations. Neither Karen Angus nor Diane Ciprian was named in the First Amended Complaint. As such, their actions did not commence until they filed their written consent with the Court on February 1, 2002. Accordingly, their causes of action are barred if their claims accrued prior to February 1, 1999, three years before the actions were commenced. Thus, all of Ms. Angus' claims that accrued prior to February 1, 1999 are barred, leaving only the claims that accrued between February 1, 1999 and April 30, 1999, when she received her last paycheck from NHC. Similarly, all of Ms. Ciprian's claims are barred, as she received her last paycheck from NHC on September 30, 1998.[12]

■ The Plaintiffs contend that, even though a strict application of the statute of limitations may bar some of their claims, equitable tolling should apply to make the claims timely. In particular, the Plaintiffs argue that the Court should find that their claims did not accrue until they learned of the Defendant's alleged violation. The Plaintiffs' argument for equitable tolling is based on two distinct grounds. First, the Plaintiffs assert that the statute of limitations should be equitably tolled because representatives of the Defendant made affirmative misrepresentations to the Plaintiffs to the effect that they would not be paid overtime wages regardless of how many hours they worked. *See Ott v. Midland–Ross Corp.*, 600 F.2d 24, 31–32 (6th Cir.1979) (concluding that a defendant who makes a misrepresentation intending to induce the plaintiff to delay suit will be estopped from pleading the statute of limitations). Second, the Plaintiffs claim that the statute of limitations should be equitably tolled because the Defendant failed to post notices advising employees of their minimum wage and overtime pay rights, as it is required to do. *See* 29 C.F.R. § 516.4 (requiring employers to post notices explaining the FLSA);[13] *Bonham v. Dresser*

---

**12.** The most recent date on which the Plaintiffs' claims for overtime compensation could have accrued was the date on which they received their last paycheck from NHC.

**13.** That regulation states:

Every employer employing any employees subject to the Act's minimum wage provisions shall post and keep posted a notice explaining the Act, as prescribed by the Wage and Hour Division, in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy. Any employer of employees to whom section 7 of the Act does not apply because of an exemption of broad application to an establishment may alter or modify the poster

*Indus.*, 569 F.2d 187, 193 (3d Cir.1977) (finding that an employer's failure to post a statutorily required notice tolled the limitations period for an ADEA claim); *Henchy v. City of Absecon*, 148 F.Supp.2d 435, 439 (D.N.J.2001) (finding that the plaintiff had raised a genuine issue of material fact with respect to equitable tolling where the employer repeatedly assured the plaintiff that the overtime compensation provided was proper and the employer failed to post a notice informing employees of their minimum wage and overtime pay rights).

Under the circumstances presented here, the Plaintiffs are not entitled to equitable tolling. First, any alleged misrepresentations from NHC representatives to the Plaintiffs regarding their hours are not the type of misrepresentations intended to toll the statute of limitations. The Plaintiffs allege that they were informed that they would not be paid for overtime. Statements to that effect do not constitute misrepresentations that would prevent the Plaintiffs from discovering the existence of their claim under federal law. To the contrary, such statements simply inform the Plaintiffs of facts that might give rise to their claims. *See Archer*, 129 F.3d 1263, 1997 WL 720406 at *4 ("The Plaintiffs knew that they were not receiving any overtime pay—and that knowledge constituted knowledge of facts triggering the accrual of a cause of action.").

Second, the only evidence presented in support of the Plaintiffs' contention that the Defendant failed to post the notice required under the FLSA are the affidavits of Plaintiffs Viciedo and Harness, in which the Plaintiffs state that they never saw such a notice. The Defendant, however, has presented evidence that it did, in fact, conspicuously post the required notice in the workplace. Indeed, another account executive, Phillip Stuck, has sworn in an affidavit that he has seen a poster in NHC's offices explaining the FLSA, including the minimum wage and overtime provisions. In light of Mr. Stuck's statement, the Court finds that the Plaintiffs have failed to demonstrate that the required notice was absent from the workplace, even though two of the Plaintiffs did not actually see it posted.

■ Moreover, the Plaintiffs' argument for equitable tolling based on the failure to post the notice required under the FLSA is improper as a matter of law. While the Plaintiffs rely on *Henchy* and *Kamens* for their position, cases from the Third Circuit, the Sixth Circuit has determined, in an unpublished opinion, that an employer's failure to post the notice required under the FLSA does not necessarily toll the statute of limitations on the plaintiff's claim for overtime pay. *See Archer*, 129 F.3d 1263, 1997 WL 720406 at *4 ("We are not persuaded that the county's failure to post such a notice justifies invocation of the tolling doctrine.").

Therefore, the Court finds that it would be improper to equitably toll the statute of limitations. Accordingly, the Court **GRANTS** partial summary judgment to the Defendant based on an application of the three-year statute of limitations to bar the FLSA claims of Plaintiff Diane Ciprian, as well as the claims of Plaintiff Karen Angus based on paychecks she received prior to February 1, 1999.

### D. State Law Claims: Statute of Limitations

As it does with respect to the federal claim, NHC argues that, even if the Court

---

with a legible notation to show that the overtime provisions do not apply. For example: "Overtime Provisions Not Applicable to Taxicab Drivers (Sec. 13(b)(17))".

29 C.F.R. § 516.4.

does not grant it summary judgment on the merits of the Plaintiffs' state law claims, NHC is entitled to partial summary judgment because the state law claims of some Plaintiffs are barred in whole or in part under the state law's statute of limitations.

Ohio law provides for a two-year statute of limitations for claims based on unpaid overtime compensation.[14] Unlike the FLSA, Ohio law does not provide for an extension of this statutory period in the case of a willful violation by the employer. Accordingly, the state law claims of certain Plaintiffs may be barred even though their federal claims are not.

Plaintiffs Karen Angus, Diane Ciprian, Jason Hoane, Christopher Peirano, Barbara Shafer, and Eric Heberle commenced their causes of action on February 1, 2002, when they filed their written consent with the Court. Thus, any state law claim asserted by these Plaintiffs that accrued prior to February 1, 2000 is barred by the two-year statute of limitations.

As recognized above, the most recent date on which the Plaintiffs' claims for overtime compensation could have accrued was the date on which they received their last paycheck from NHC. Accordingly, all of Ms. Angus' state law claims are barred, as she received her last paycheck from NHC on April 30, 1999. Similarly, all of Ms. Ciprian's state law claims are barred, as she received her last paycheck from NHC on September 30, 1998. Mr. Hoane's state law claims are barred, as he received his last paycheck from NHC on June 15, 1999. Likewise, Mr. Peirano's state law claims are barred by the statute of limitations, as he received his last paycheck from NHC on June 30, 1999. Ms. Shafer's state law claims are barred, as she received her last paycheck from NHC on April 15, 1999. Finally, some of the state law claims filed by Mr. Heberle are barred by the two-year statute of limitations, as only those claims that accrued after February 1, 2000 fall within the statutory period.[15]

Therefore, the Court **GRANTS** partial summary judgment to the Defendant based on an application of the two-year statute of limitations to bar the state law claims of Plaintiffs Karen Angus, Diane Ciprian, Jason Hoane, Christopher Peirano, and Barbara Shafer, as well as the state law claims of Eric Heberle based on paychecks he received prior to February 1, 2000.

### E. Liquidated Damages

NHC asserts that, even if it is liable to the Plaintiffs for overtime compensation under the FLSA, it is not liable for liquidated damages.

■■■■■ The FLSA provides for liquidated damages in an amount equal to the plaintiff's actual damages. 29 U.S.C. § 216(b). The liquidated damages are intended to compensate the plaintiff for the loss he suffered by not being paid the wages he was owed in a timely manner; they are not intended to punish the employer. *McClanahan v. Mathews*, 440 F.2d 320, 322–23 (6th Cir.1971) (recognizing that liquidated damages under the FLSA " 'are compensation, not a penalty or punishment' ") (quoting *Overnight Mo-*

---

**14.** In particular, Ohio Rev.Code section 2305.11 states in pertinent part:

> An action ... by an employee for the payment of unpaid minimum wages, unpaid overtime compensation, or liquidated damages by reason of the nonpayment of minimum wages or overtime compensation shall be commenced within two years after the cause of action accrued.

Ohio Rev.Code section 2305.11(A).

**15.** Mr. Heberle received his last paycheck from NHC on March 31, 2000.

*tor Co. v. Missel,* 316 U.S. 572, 583, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942)). The court may determine, however, that an award of liquidated damages is improper under certain circumstances:

[I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages....

29 U.S.C. § 260. Pursuant to this provision, an employer must demonstrate that its conduct was both in good faith and reasonable for the court to determine that liquidated damages are improper. *Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 968 (6th Cir.1991) (citation omitted).

■ NHC argues an award of liquidated damages would be inappropriate under these circumstances because it relied in good faith on the prior decision of the DOL that New Horizons account executives are exempt from the FLSA. Although the DOL's findings related to National Horizons' Santa Ana office, NHC maintains that it was reasonable to rely on those findings given that the account executive position at NHC in Columbus is virtually identical to the account executive position at National Horizons in Santa Ana.

Federal courts have determined that an employer acts in good faith so as to justify denying liquidated damages when the employer relies on representations or decisions of the DOL that the employer's conduct do not violate the FLSA. *See Miller v. Kansas Power & Light Co.,* 585 F.Supp. 1509, 1515 (D.Kan.1984) (declining to award liquidated damages when the defendant, in good faith, acted in accordance with a DOL investigation that determined that the defendant had not violated federal

law). Here, the Defendant has presented evidence that it acted in good faith in accordance with the findings of the DOL. The Plaintiff, however, has presented evidence that, despite the findings of the DOL, the Defendant may have had knowledge that it was violating the FLSA when it failed to pay overtime compensation for periods during which the Plaintiffs' actual commissions did not amount to at least fifty percent of their total compensation. Accordingly, at this point in the litigation, a question of fact exists with respect to whether the Defendant acted both in good faith and reasonably when it failed to pay the Plaintiffs overtime compensation.

Therefore, the Court **DENIES** the Defendant's Motion for Summary Judgment with respect to the issue of liquidated damages.

### F. Res Judicata

■ Finally, NHC contends that it is entitled to summary judgment with respect to the claims asserted by Plaintiff Viciedo because those claims are barred by the doctrine of *res judicata.* Under that doctrine, which is also known as claim preclusion, "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Township,* 73 Ohio St.3d 379, 653 N.E.2d 226, 229 (1995). Pursuant to this expansive view of claim preclusion, " 'an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or might have been litigated in a first lawsuit.' " *Holzemer v. Urbanski,* 86 Ohio St.3d 129, 712 N.E.2d 713, 716 (1999) (quoting *Rogers v. Whitehall,* 25 Ohio St.3d 67, 494 N.E.2d 1387, 1388 (1986)).

■ A valid, final judgment was rendered upon the merits in a prior action

involving NHC and Mr. Viciedo. Previously, NHC brought suit against Mr. Viciedo for his violation of a non-compete agreement.[16] On January 9, 2001, the Court of Common Pleas for Franklin County entered a Final Judgment and Consent Decree and Permanent Injunction, enjoining Mr. Viciedo from further breaching his non-compete agreement with NHC. NHC argues that the claims asserted by Mr. Viciedo in the present matter arise out of the same transaction or occurrence that was the subject matter of the prior action—his employment relationship with NHC. *See Clark v. Haas Group, Inc.,* 953 F.2d 1235, 1239–40 (10th Cir.1992) (finding that a plaintiff's claims against her employer for violations of the Equal Pay Act and Age Discrimination in Employment Act were barred by the doctrine of *res judicata* when the plaintiff had previously brought suit against the employer for unpaid overtime compensation under the FLSA).

The Court finds that Mr. Viciedo's claims do not arise from the same transaction or occurrence that was the subject of the prior state court action. The Court recognizes that the Tenth Circuit in *Clark* adopted a rule that claims stemming from the plaintiff's employment relationship with the defendant are claims arising from the same transaction or occurrence. *Clark,* 953 F.2d at 1239. Even the Tenth Circuit, however, has narrowed the scope of that rule. *See Mitchell v. City of Moore,* 218 F.3d 1190, 1202 (10th Cir.2000) (holding that, when claims regarding the employment relationship arise after the plaintiff's first case is initiated, the second case is not barred by *res judicata* ). Furthermore, it appears that no equivalent rule exists within the Sixth Circuit, and this case does not provide the proper cir-

cumstances for adopting such a rule. While both the prior case and the current matter relate to Mr. Viciedo's employment relationship with NHC, the aspects of the employment relationship at issue in the two cases are quite distinct. In the prior state court case, the issues centered on *Mr. Viciedo's* conduct *after* his employment with NHC. In this case, however, the focus is on *NHC's* conduct *during* Mr. Viciedo's employment. Thus, unlike in *Clark,* where the court recognized that the two actions were related in time, space, origin, or motivation, here the two actions differ with respect to the actor whose conduct serves as the origin of the claim, the place of that actor's conduct, the motivation, and the relevant time frame. *See Clark,* 953 F.2d at 1239 (citation omitted).

Therefore, the Court **DENIES** the Defendant's Motion for Summary Judgment with respect to the claims asserted by Mr. Viciedo.

## V.  CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** the Defendant's Motion for Summary Judgment with respect to the FLSA claims brought by Diane Ciprian, as well as the FLSA claims of Karen Angus based on paychecks she received prior to February 1, 1999, as those claims are barred by the statute of limitations. The Court **GRANTS** the Defendant's Motion with respect to the state law claims of the following Plaintiffs, whose claims are barred by the statute of limitations: Karen Angus, Diane Ciprian, Jason Hoane, Christopher Peirano, and Barbara Shafer, as well as the state law claims of Eric Heberle based on paychecks he received prior to February 1, 2000. In addition, the Court **GRANTS** the Defendant's Motion

---

**16.** In that action, NHC alleged that, after terminating his employment with NHC, Mr. Viciedo was employed by one of NHC's competitors in violation of the agreement.

with respect to the claims of Plaintiffs Ferret, Heberle, and Viciedo based on the pay periods during which they received more than fifty percent of their compensation from commissions. The Court **DENIES** the Defendant's Motion for Summary Judgment with respect to all other claims asserted by the Plaintiffs.

**IT IS SO ORDERED.**