**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 14a0478n.06**

**No. 13-2638**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Jul 02, 2014*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ELIAS AWAD, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| CHRYSLER GROUP, LLC, a Delaware limited | ) | COURT FOR THE EASTERN |
| liability company, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| FIAT S.P.A., et al., | ) | |
| | ) | |
| Defendants. | ) | |

BEFORE: SUTTON and GRIFFIN, Circuit Judges; and SARGUS, District Judge.[*]

GRIFFIN, Circuit Judge.

Plaintiff Elias Awad appeals the district court's order granting Chrysler Group, LLC's

("Chrysler's") motion to dismiss in this action under the False Claims Act ("FCA"), 31 U.S.C.

§ 3729 *et seq.* For the reasons set forth below, we affirm.

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

I.

The district court cogently summarized the facts of this case:

Chrysler was formed on April 28, 2009 with the use of federal funds as a limited liability company. Through a Master Transaction Agreement, Chrysler agreed to purchase the assets of an entity named Old Carco. To facilitate the transaction, and in exchange for capital contributions, Chrysler issued membership interests to UAW, Fiat, the United States Department of the Treasury (United States), and Canada CH Investment Corporation (Canada).

Relevant to this action, Chrysler's operating agreement with the United States required it to keep complete and accurate books and records, including detailed financial records that accurately and fairly reflected all financial transactions and dispositions of assets of the company among other things.

Awad has been employed with Chrysler and its predecessors since 1998. From 2007 to 2010, Awad was regional controller for Latin America. From 2010 until his termination in 2011, Awad was Financial Director – Chief Financial Officer of the Chrysler de Venezuela subsidiary.

In January of 2010, Awad was assigned as the lead financial analyst on the sale of a subsidiary of Chrysler in Columbia (Chrysler Columbia). In this capacity, Awad conducted an initial analysis of Chrysler Columbia and determined that it had a fair market value of approximately $100,000,000. However, Chrysler's upper management instructed Awad to manipulate the books to reflect that Chrysler Columbia had a fair market value of only $1,500,000, a fraction of its true value, so as not to record its true value.

Awad objected to manipulating the books. He voiced his objections and concern to upper management and Chrysler's in-house counsel. Awad was subsequently removed from the project involving the Chrysler Columbia account and reassigned to work in Venezuela on August 5, 2010. Awad received a performance appraisal that was less favorable than in prior years. He was later demoted and eventually terminated from his employment with Chrysler.

On September 7, 2011, Awad filed an action in Wayne County Circuit Court, later transferred to Oakland County Circuit Court, against Chrysler and certain Chrysler executives claiming that he was wrongfully terminated from his employment with Chrysler. . . .

In the state court action, Awad claimed that he was entitled to receive a relocation allowance for being relocated to Venezuela, as well as a monthly housing allowance and a quality of life allowance. He claimed that he did not receive these payments. In addition, Awad claimed that, while he was in Venezuela, he was falsely accused by Chrysler of violating its vehicle purchase policy in 2009.

Awad alleged that Chrysler terminated him on June 23, 2011 claiming that he violated the vehicle purchase policy. . . .

The action was sent to Case Evaluation pursuant to MCR 2.403. Each side accepted the Case Evaluation award and the case was dismissed with prejudice on November 2, 2012.

The parties agree that on September 15, 2011—eight days after he filed his state court action—Awad filed a memorandum with the Department of Justice disclosing his allegations regarding financial wrongdoings under the FCA. On September 20, 2011, plaintiff filed the instant action in federal district court. Chrysler filed a motion to dismiss, alleging, *inter alia*, that Awad's FCA claims were barred by the doctrine of res judicata. The district court granted the motion, concluding that Awad could have brought his federal claims in state court. Awad timely appealed.

## II.

We review *de novo* the grant of a motion to dismiss under Rule 12(b)(6), construing the record in the light most favorable to the non-moving party and accepting all well-pleaded factual allegations as true. *See Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 274 (6th Cir. 2010). While a complaint will survive a motion to dismiss if it contains "either direct or inferential allegations respecting all material elements" necessary for recovery under a viable legal theory, we "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id.* at 275–76 (citation and quotation marks omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions . . . ." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 246–47 (6th Cir.2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Rather, '[t]o survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* at 247 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

### III.

Awad argues the district court erred by concluding that his FCA claims are barred by the doctrine of res judicata. We disagree.

"Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Abbott v. Michigan,* 474 F.3d 324, 330 (6th Cir. 2007) (citing 28 U.S.C. § 1738). The State of Michigan has taken a "broad approach to the doctrine of res judicata." *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004). In Michigan,

> [t]he doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action. The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, *or could have been*, resolved in the first.

*Id.* (emphasis added). Indeed, res judicata "bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.* (citing *Dart v. Dart*, 597 N.W.2d 82 (Mich. 1999)). Michigan's approach to res judicata is consistent with the federal approach. *See Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995) ("[R]es judicata has four elements: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.). In Michigan, settlement and consent judgments are final judgments on the merits for purposes of res judicata. *Ditmore v. Michalik*, 625 N.W.2d 462, 466 (Mich. Ct. App. 2001).

The FCA "allows a private individual to bring a civil action" for violations of the FCA. *U.S. ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326, 329 (6th Cir. 1998). Not all citizens can bring a claim under the FCA in all cases, however; the statute contains a jurisdictional bar. Specifically, the FCA deprives courts of jurisdiction to hear an FCA claim if the information supporting the claim has already been "publicly disclosed." 31 U.S.C. § 3730(e)(4)(A). We previously summarized the contours of the public disclosure rule as follows:

> For a relator's *qui tam* action to be barred by a prior public disclosure of the underlying fraud, the disclosure must have (1) been public, and (2) revealed the same kind of fraudulent activity against the government as alleged by the relator. With respect to this first element, the FCA clarifies that a prior disclosure of fraud is public if it appears in the news media or is made in a criminal, civil, or administrative hearing, or in a congressional, administrative, or Government Accounting Office report, audit, or investigation. Public disclosure also includes documents that have been filed with a court, such as discovery documents, and a plaintiff's complaint.

> As for the second element, we have held that a public disclosure reveals fraud if the information is sufficient to put the government on notice of the likelihood of related fraudulent activity. To qualify as a public disclosure of fraud, the disclosure is not required to use the word "fraud" or provide a specific allegation of fraud.

*United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 511–12 (6th Cir. 2009) (citations, quotation marks, and alternations omitted). There is an exception to the public disclosure provision of the FCA, however—if the person bringing the claim is the "original source of the information[,]" the jurisdictional bar does not apply. 31 U.S.C. § 3730(e)(4)(A).[1] The FCA defines "original source" as "an individual who . . . *prior to a public disclosure* under subsection

---

[1]The parties (and the district court) all rely on outdated statutory language. Congress amended § 3730(e) effective March 23, 2010, well before any action in the instant case commenced. However, none of the analysis of the issues raised herein is affected by the change in statutory language; in any event, the parties do not raise any issue related to the change in the statute. Accordingly, when we refer to § 3730's statutory language, we use the current version.

(e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based[.]" 31 U.S.C. § 3730(e)(4)(B) (emphasis added). Finally, although Awad argued in the district court that the federal courts have exclusive jurisdiction to hear FCA claims, the district court disagreed, and Awad does not challenge this aspect of the district court's ruling.

Awad argues, consistent with the district court's opinion, that his state court filing was a "public[] disclos[ure]" under § 3730(e)(4)(A). Therefore, Awad argues, the only way he could have brought his FCA claim in state court was if he qualified as an "original source." 31 U.S.C. § 3730(e)(4)(B). Awad insists he did not qualify as an original source because he provided his information to the government *after* the public disclosure (i.e. the state court filing), and therefore does not meet the statutory definition of an original source. *Id.* We disagree with Awad that the state court filing constituted a public disclosure in the first instance.

The district court's dismissal order suggests that the district court's understanding of the FCA and its attendant case law was that a previously filed complaint is a "public disclosure" as a matter of law, so long as the previously filed complaint arose from the same facts as a subsequent FCA claim. *See* R.27 at 9, ID at 423 (citing *Poteet* for the proposition that "the filing of a state court complaint is 'clearly' a public disclosure"). This is not the case. We have made clear that, "[f]or a relator's *qui tam* action to be barred by a prior 'public disclosure' of the underlying fraud, the disclosure must have (1) been public, and (2) *revealed the same kind of fraudulent activity against the government as alleged by the relator*." *Poteet*, 552 F.3d at 511 (emphasis added). In turn, a public disclosure "reveals fraud if the information is sufficient to put the [federal] government on notice of the likelihood of related fraudulent activity[;]"

although the disclosure is not required to use the word "fraud," it must nonetheless be sufficient to "lead[] to a conclusion of fraud." *Id*. at 512 (citations omitted).

Awad's state court complaint[2] is insufficient to put the government on notice of alleged fraud. Awad's state court complaint alleges: (1) that Awad, during his employment with Chrysler, performed his duties better than adequately; (2) that his September 2010 paycheck did not reflect a $10,000 relocation allowance for his move to Venezuela, and he still has not been paid that $10,000; (3) that Chrysler falsely accused Awad of violating a "vehicle purchase policy" despite Awad's proof to the contrary; (4) that Chrysler terminated Awad; (5) that after Awad's termination, Chrysler executives lied and told others that the reason Awad was fired was because Awad had stolen money from the company; and (6) that others who violated the vehicle purchase policy were not also fired. In short, the totality of Awad's factual allegations addresses Chrysler's termination of him and other Chrysler employees' subsequent treatment of Awad. There is no mention in the complaint of any fraud related to the federal government; nor is there any mention of any federal money at all (which, of course, is the alleged basis of the *qui tam* action in the first place).

Indeed, we conclude that Awad did not allege facts "sufficient to put the [federal] government on notice of the likelihood of related fraudulent activity." *Poteet*, 552 F.3d at 512.

---

[2]Our analysis on this point focuses only on Awad's initial complaint in state court, filed in Wayne County on September 7, 2011, and not on his subsequent complaint filed in Oakland County on April 16, 2012, as the Wayne County complaint is the only one relevant to Awad's argument. Awad's argument is entirely contingent on timing, specifically the fact that his notification to the federal government of alleged fraud came after the filing of the state court complaint. Accordingly, even assuming that the Oakland County complaint constituted a public disclosure under the FCA (which, in our opinion, it did not), Awad notified the federal government of alleged fraud prior to the Oakland County complaint, and thus could still be an original source relative to that complaint. In any event, the Oakland County complaint alleges materially the same facts as the Wayne County complaint.

(citation and quotation marks omitted). Therefore, the state-court complaint was not a "public disclosure" under the FCA. 31 U.S.C. § 3730(e)(4)(A). Awad's argument that he could not have brought his FCA claim in state court is incorrect. *See Jones*, 160 F.3d at 330 (if there is no prior public disclosure, there is no jurisdictional bar, and "the inquiry ends and the *qui tam* action may proceed"). For this reason, we need not reach whether Awad was an original source, because the original source provision of the statute is an exception to a jurisdictional bar, and here, there is no jurisdictional bar. Although the district court erred by reasoning that the state court complaint was a public disclosure and focused its analysis instead on whether Awad qualified as an original source, reversal is not warranted because the district court reached the correct result: that res judicata bars Awad's FCA claim. *See Union CATV Inc. v. City of Sturgis*, 107 F.3d 434, 442 (6th Cir. 1997) (an appellate court may affirm a district court where the district court reached the right result for the wrong reason).

Next, Awad argues that the district court erred by concluding that his FCA claim is barred by res judicata because, according to Awad, the federal and state actions "involve distinct claims based on different time frames, facts, events and parties. As such the doctrine of res judicata does not apply and this instant action could not have been resolved [in the state court action]." We disagree.

As noted above, Michigan takes a transactional approach to res judicata, barring all subsequent claims arising out of the same factual transaction. *Adair*, 680 N.W.2d at 398. "Whether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in time, space, origin or motivation, [and] whether they form a convenient trial unit." *Id*. (citation omitted and emphasis

removed). The Michigan Supreme Court, when explaining the transactional approach, contrasted it with the so-called "same evidence test":

> [U]nder the same evidence test the definition of what constitutes a cause of action is narrower than under the transactional test. As explained in the Restatement (Second) of Judgments, the same evidence test is tied to the theories of relief asserted by a plaintiff, the result of which is that two claims may be part of the same transaction, yet be considered separate causes of action because the evidence needed to support the theories on which they are based differs. By contrast, the transactional approach is more pragmatic. Under this approach, a claim is viewed in "factual terms" and considered "coterminous with the transaction, *regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff*; * * * and regardless of the variations in the evidence needed to support the theories or rights."

*Id.* (citation omitted and emphasis added). Even assuming, arguendo, that Awad's arguments may have resonance under the "same evidence" test, they fall short under the transactional approach. The facts underlying both Awad's federal and state claims all relate to Awad's time working for Chrysler, and all address Chrysler's various alleged motivations for terminating him (in the state complaint, Awad's alleged violation of the vehicle purchase policy; in the federal complaint, Awad's alleged refusal to "cook the books"). Accordingly, the facts underlying each complaint are related in time, space, origin, and motivation—and, because the facts all relate to Awad's employment in Venezuela and subsequent termination, they would form a convenient trial unit. *Id.* In other words, Awad's federal and state complaints both arose from the same transaction—his employment and subsequent termination. The fact that Awad asserts different theories in his state complaint than in his federal complaint to explain why he was terminated is insufficient to overcome res judicata under Michigan's transactional approach. *Id.*

To summarize, then, res judicata bars the claims raised in Awad's federal complaint because: (1) his state court action was decided on the merits (a settlement, *see Ditmore*,

625 N.W.2d at 466); (2) his federal court action was between the same parties or privies (i.e. Awad and Chrysler); and (3) the matter in his federal court action could have been resolved in the state court action, for the reasons stated herein. *Adair*, 680 N.W.2d at 396; *see also Kane*, 71 F.3d at 560. Accordingly, we affirm the district court's judgment.

IV.

In a brief, three-sentence paragraph with no citations to the record or to substantive law, Awad argues that the district court should have allowed him leave to amend his complaint to "make the distinction between the State Court Action and the instant action even more clear." However, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citation omitted). To that end, we deem Awad's amendment argument waived. However, we note that even if Awad had not waived this argument, he would still not be entitled to relief. Awad already had the opportunity to plead his federal claims twice, and Federal Rule of Civil Procedure 15(a)(2) instructs that the court "should"—not "must"—grant leave to amend "when justice so requires." Awad has not identified any reason why "justice . . . require[d]" an additional opportunity to expand the factual basis for his complaints.

V.

For these reasons, we affirm the district court's dismissal of Awad's complaint.