**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0179n.06

No. 19-1362

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| CURTIS ETHERTON; CHAD MICHAEL FULLER, | ) ) ) | **FILED**<br>Mar 30, 2020<br>DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellants, | ) |  |
|  | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
|  | ) | THE EASTERN DISTRICT OF |
| SERVICE FIRST LOGISTICS, INC.; | ) | MICHIGAN |
| ROYCE NEUBAUER, | ) |  |
|  | ) |  |
| Defendants-Appellees. | ) |  |

BEFORE: SUHRHEINRICH, DONALD, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. Service First Logistics, Inc., a logistics company located outside of Detroit, helps businesses ship their goods. It hired Curtis Etherton and Chad Fuller as freight brokers. After the company demoted these employees in the fall of 2016, they jumped to a competitor. Service First responded by suing them in Michigan state court for violating their non-compete agreements and for misappropriating trade secrets. The parties settled that state suit, agreeing to dismiss with prejudice "all claims and counterclaims raised or which could have been raised by all parties." Forty-two days later, Etherton and Fuller sued Service First and its President and CEO, Royce Neubauer, in federal court, claiming that the company owed them unpaid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207(a), 216(b), and the Michigan Workforce Opportunity Wage Act, Mich. Comp. Laws § 408.414a. The district court granted

summary judgment to Service First on res judicata grounds. It held that Etherton and Fuller should have raised their overtime claims as counterclaims in Service First's non-compete case. *Etherton v. Serv. First Logistics, Inc.*, 2019 WL 1077099, at *5–8 (E.D. Mich. Mar. 7, 2019). We agree and affirm.

The doctrine of res judicata (or claim preclusion)—like its twin, collateral estoppel (or issue preclusion)—"predates the Republic" because most societies have intuitively recognized that litigation must eventually come to an end. *San Remo Hotel, L.P. v. City & Cty. of San Francisco*, 545 U.S. 323, 336–37 (2005). Described generically, res judicata prohibits a plaintiff from relitigating a "claim" against a defendant if those two parties have already litigated the claim to a final judgment on the merits in an earlier suit. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980). This rule "relieve[s] the parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Id.*

In this case, a state court issued the earlier final judgment. Since the Founding, Congress has told federal courts that they should give the preclusive effect to a state-court judgment that it would receive in the state courts. 28 U.S.C. § 1738; *Allen*, 449 U.S. at 96 & n.8. We thus must look to Michigan law to decide whether res judicata bars Etherton's and Fuller's overtime claims. *AuSable River Trading Post, LLC v. Dovetail Sols., Inc.*, 874 F.3d 271, 274 (6th Cir. 2017).

In Michigan, res judicata bars a claim in a second action when "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004); *see Sewell v. Clean Cut Mgmt., Inc.*, 621 N.W.2d 222, 225 (Mich. 2001) (per curiam). The parties agree that this case satisfies the first two elements. The stipulated dismissal with prejudice in the non-compete case "acts as an adjudication on the merits." *Limbach v.*

*Oakland Cty. Bd. of Cty. Rd. Comm'rs*, 573 N.W.2d 336, 340 (Mich. Ct. App. 1997). The case also involves the same parties: Etherton and Fuller and Service First. (While Royce Neubauer was not a party in the state case, Etherton and Fuller do not dispute that he is in privity with Service First.) This case thus boils down to Michigan's third element: Is the matter at issue in this FLSA suit sufficiently connected to the matter that was at issue in the non-compete suit such that it should have been raised in that earlier case?

Because res judicata is a creature of common law, Michigan courts have expanded this third element over time. Start with the more typical fact pattern in which the two parties remain on the same side of the "v." in both cases, with the *same* plaintiff bringing consecutive suits against the *same* defendant. In that setting, some Michigan courts used to follow a "same evidence" test. Under that test, res judicata would apply only "if the evidence needed to sustain the second suit would have sustained the first, or if the same facts were essential to maintain both actions." *Adair*, 680 N.W.2d at 397 (citation omitted); *cf. Gose v. Monroe Auto Equip. Co.*, 294 N.W.2d 165, 167 & n.2 (Mich. 1980). But the Michigan Supreme Court has jettisoned this approach, clarifying that Michigan follows a broader "transactional" test to decide whether new claims relate to earlier ones. *Adair*, 680 N.W.2d at 398. That test asks whether "a single group of operative facts give[s] rise to the assertion of relief" in both cases. *Id.* at 397 (citation omitted).

This case comes with an added wrinkle: the parties have flipped sides. The *plaintiff* in the first suit is now the *defendant* in the second. That party argues that the defendants in the first suit (now the plaintiffs) should have asserted their current claims as counterclaims in the earlier suit. Michigan cases are murkier over whether the transactional test extends to this procedural posture. The Michigan Supreme Court historically applied res judicata more narrowly when the defendant from the first case became the plaintiff in the second. If a physician sued to collect unpaid bills,

for example, the patient need not plead malpractice as a defense or counterclaim in that collection suit. The patient could simply bring a later malpractice suit. *Leslie v. Mollica*, 211 N.W. 267, 268–69 (Mich. 1926); *see Ternes Steel Co. v. Ladney*, 111 N.W.2d 859, 861 (Mich. 1961).

Over the last few decades, however, Michigan courts have shifted towards the transactional test in all suits between two parties—regardless of who brings the second one. When rejecting the same-evidence test, the Michigan Supreme Court stated that res judicata bars "every claim arising from the same transaction that the parties" (not the plaintiff) could have raised in the first case. *Adair*, 680 N.W.2d at 397. Some Michigan courts have followed this language by applying the transactional test to claims that could have been raised as counterclaims in an earlier case. *See, e.g.*, *Stanton v. Auto Owners Ins. Co.*, 2016 WL 6269614, at *5 (Mich. Ct. App. Oct. 25, 2016) (per curiam); *Sprague v. Buhagiar*, 539 N.W.2d 587, 588–89 (Mich. Ct. App. 1995); *Boland v. C.D. Barnes Assocs., Inc.*, 337 N.W.2d 581, 581–82 (Mich. Ct. App. 1983). Our court has taken the same approach when we have applied Michigan's res judicata rules in this context. *See AuSable*, 874 F.3d at 274; *Rondigo, L.L.C. v. Twp. of Richmond*, 522 F. App'x 283, 286 (6th Cir. 2013). At the same time, other Michigan cases continue to apply a narrower rule, noting that the Michigan Supreme Court has never overruled the principles from *Leslie* (the physician-patient case). *See, e.g.*, *Bass v. Peters*, 2017 WL 4844994, at *2–3 (Mich. Ct. App. Oct. 26, 2017) (per curiam); *Bd. of Cty. Rd. Comm'rs v. Schultz*, 521 N.W.2d 847, 850–52 (Mich. Ct. App. 1994) (per curiam); *Van Pembrook v. Zero Mfg. Co.*, 380 N.W.2d 60, 66 (Mich. Ct. App. 1985).

We need not predict whether the Michigan Supreme Court would extend the transactional test to cases in which the parties have switched sides in the second suit. Etherton and Fuller quote from *Adair* and concede that the transactional test governs, so they have forfeited any contrary argument. Under that test, res judicata "bars not only claims already litigated, but also every claim

4

arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair*, 680 N.W.2d at 396. And when considering whether the "factual grouping" in the two cases constitutes the same "transaction," we must take a pragmatic approach "by considering whether the facts are related in *time, space, origin or motivation*, [and] whether they form a convenient trial unit." *Scott v. Reif*, 659 F. App'x 338, 343 (6th Cir. 2016) (quoting *Adair*, 680 N.W.2d at 398).

Two examples show how courts have applied Michigan's test in this employment context. *See United States ex rel. Awad v. Chrysler Grp., LLC*, 571 F. App'x 366, 371–72 (6th Cir. 2014); *Engle v. City of Livonia*, 2007 WL 1206833, at *1 (Mich. Ct. App. Apr. 24, 2007) (per curiam). In *Awad*, Elias Awad originally brought a wrongful-termination suit against Chrysler in Michigan court claiming that he had been falsely accused of violating the company's vehicle-purchase policy. 571 F. App'x at 367–68. The parties settled. *Id.* at 368. Eight days later, Awad brought a federal suit on behalf of the United States under the False Claims Act, claiming that Chrysler had "manipulate[d] the books" during an earlier sale of a subsidiary and transferred him to a different location when he complained about the improprieties. *Id.* at 367–68. We found that res judicata applied under Michigan's transactional test. *Id.* at 371–72. We reasoned that "[t]he facts underlying both Awad's federal and state claims all relate to Awad's time working for Chrysler, and all address Chrysler's various alleged motivations for terminating him[.]" *Id.* at 371. We added that the facts of both cases "would form a convenient trial unit" because they related to Awad's employment and termination. *Id.* at 372; *see also McConnell v. Applied Performance Techs., Inc.*, 2002 WL 32882707, at *6–7 (S.D. Ohio Dec. 11, 2002), *aff'd*, 98 F. App'x 397, 398–99 (6th Cir. 2004) (applying Ohio's transactional test).

In *Engle*, the City of Livonia terminated its fire chief, Ronald Engle, and he brought claims against the city and its mayor challenging the dismissal. 2007 WL 1206833, at *1. The Michigan courts rejected his claims. *Id.* A couple years later, Engle sued the city, its mayor, and the City of Livonia Retirement System seeking access to retirement benefits that he claimed he was due from his time in the city's employ. *Id.* A state court held that res judicata barred Engle's claim. *Id.* While Engle did not raise the retirement issues in his first suit, he could have. *Id.* And "[l]ike the issues raised in the first action, the pension issues here stem from [Engle's] employment with the city and thus form part of the same transaction giving rise to the first action." *Id.* (The court nevertheless remanded because it was unclear whether the retirement board was in privity with the city. *Id.* at *2–3.)

Applying Michigan's transactional test here, we likewise find that res judicata bars Etherton's and Fuller's overtime claims. For starters, Etherton and Fuller readily admitted in the district court that they could have brought their overtime claims in the non-compete suit. Their overtime claims had accrued by then, and with any amount of "reasonable diligence" they could have raised them as counterclaims. *Adair*, 680 N.W.2d at 396.

Etherton's and Fuller's overtime claims also stem from the same transaction as Service First's non-compete claim when assessed under Michigan's "pragmatic[]" approach. *Scott*, 659 F. App'x at 343. The claims of the two sides arose out of their employment relationship. Under both *Awad* and *Engle*, this fact goes a significant way toward showing that the claims form part of the same transaction. *Awad*, 571 F. App'x at 371–72; *Engle*, 2007 WL 1206833, at *1; *see also McNeill v. Wayne Cty.*, 2009 WL 799164, at *3–5 (E.D. Mich. Mar. 23, 2009); *Darrow v. City of Potterville*, 2008 WL 5382341, at *3–4 (W.D. Mich. Dec. 22, 2008); *Schulz v. Hope Network*

*Rehab. Servs.*, 2007 WL 330201, at *2–3 (W.D. Mich. Jan. 31, 2007), *aff'd*, 256 F. App'x 774 (6th Cir. 2007) (per curiam).

To be sure, Service First's non-compete suit also concerned facts that came after Etherton's and Fuller's employment had ended (their new jobs with a competitor). But that suit was predicated on an agreement that they signed while with Service First. And both suits likely would have focused on Etherton's and Fuller's duties at Service First. Their duties, of course, form the crux of their claims for overtime pay—the parties spend the majority of their briefing discussing whether those duties fell within the "administrative" exemption to the FLSA's overtime requirement. 29 C.F.R. § 541.200. But Etherton's and Fuller's job duties also would have been significant to Service First's non-compete case. In deciding whether to enforce a non-compete agreement, *see* Mich. Comp. Laws § 445.774a(1), Michigan courts often consider an employee's duties and importance to the company. *See, e.g.*, *Delphi Auto. PLC v. Absmeier*, 167 F. Supp. 3d 868, 881–82 (E.D. Mich. 2016); *Huron Tech. Corp. v. Sparling*, 2014 WL 4495207, at *1–3 (Mich. Ct. App. Sept. 11, 2014) (per curiam). Indeed, near the time of the non-compete case, Fuller complained to the National Labor Relations Board that the company had misclassified him and that the non-compete agreement was overbroad. The upshot is that the evidence between the two cases would overlap, confirming that res judicata should apply. *Awad*, 571 F. App'x at 372.

The two sets of claims also would have formed a "convenient trial unit." *Adair*, 680 N.W.2d at 396 (citation omitted). The witnesses largely would have been the same. *Cf. Fritz v. Delfield Co.*, 2003 WL 21279555, at *4 (Mich. Ct. App. June 3, 2003) (per curiam). And Etherton and Fuller have provided no reason why they needed to file a separate suit to pursue their FLSA claims. The suit came a mere 42 days after the parties had settled the non-compete case and agreed to conclude "all claims and counterclaims raised or which could have been raised." Etherton and

Fuller also requested their personnel files, along with information that would be relevant to their FLSA claims, on the same day that the parties filed the stipulated dismissal in state court. Their "inexplicabl[e]" decision not to raise their overtime claims as counterclaims in state court "now prevents [them] from filing a new suit predicated on these claims." *HTC Global Servs., Inc. v. HG Detroit Consulting, L.L.C.*, 2014 WL 3794478, at *7 (Mich. Ct. App. July 31, 2014) (per curiam).

Etherton and Fuller's contrary arguments do not convince us otherwise. They initially discuss caselaw indicating that the FLSA restricts a worker's ability to waive overtime claims, and suggest that their prior settlement of all counterclaims in the non-compete suit should not extend to their FLSA claims. Yet the district court did not rule for Service First on the ground that Etherton and Fuller had settled their FLSA claims; it ruled for Service First on the ground of res judicata. Our decision in *Applied Performance Technologies* shows that the two grounds are distinct. There, we held that a general settlement in an earlier case did not extend to the plaintiff's FLSA claim. *See* 98 F. App'x at 398–99. Yet we then held that the suit was barred by res judicata because both suits addressed the compensation that the plaintiff should have received during the parties' employment relationship. *Id.*

Etherton and Fuller also cite two cases in which courts held that res judicata did not apply when an employer filed a non-compete suit against an employee and the employee then brought FLSA claims in a second suit. *See Bodle v. TXL Mortg. Corp.*, 788 F.3d 159, 165–66 (5th Cir. 2015); *Viciedo v. New Horizons Computer Learning Ctr. of Columbus, Ltd.*, 246 F. Supp. 2d 886, 906–07 (S.D. Ohio 2003). Yet these cases involved the res judicata rules from other states (Texas and Ohio). Different states can apply the transactional test differently, a fact that Etherton and Fuller concede by noting that "the res judicata standard under Texas law varies from the Michigan standard." And the district court's finding that res judicata applies to the facts in this case better

implements the "broad approach to the doctrine" that the Michigan Supreme Court has taken, *Adair*, 680 N.W.2d at 396, as evidenced by our own previous decision in *Awad*, 571 F. App'x at 371–72.

We affirm.

**BERNICE BOUIE DONALD, dissenting.** I disagree with the majority and would hold that res judicata does not bar Etherton and Fuller from raising their overtime claims.

The majority was correct to apply Michigan's transactional test to determine whether Etherton's and Fuller's overtime claims should have been raised in the earlier non-compete action filed by Service First. As the majority noted, res judicata "bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair v. Michigan*, 680 N.W.2d 386, 396 (Mich. 2004).

Michigan courts' "broad approach to the doctrine of res judicata," *id.*, notwithstanding, the overtime claims do not arise from the same transaction as the non-compete claims. The majority cites prominently to two cases applying res judicata under Michigan law: *United States ex rel. Awad v. Chrysler Grp., LLC*, 571 F. App'x 366 (6th Cir. 2014), and *Engle v. City of Livonia*, No. 272618, 2007 WL 1206833 (Mich. Ct. App. Apr. 24, 2007) (per curiam). But, unlike the claims here, these cases involve sets of claims which are both tied to actions that occurred *during* the plaintiff's employment. In *Awad*, the plaintiff-employee originally brought a wrongful-termination suit against the defendant-employer in Michigan state court, and later attempted to file another suit in federal court relating to activities which occurred *during* his employment. 571 F. App'x at 367-68. Similarly, in *Engle*, the plaintiff-employee originally brought claims challenging his dismissal in Michigan state court, and later attempted to file another suit in Michigan state court seeking access to retirement benefits earned *during* his employment. 2007 WL 1206833, at *1.

Here, however, the two sets of claims involve separate transactions. While the instant action involves overtime claims related to Etherton's and Fuller's employment at Service First, the prior action filed by Service First, relating to Etherton's and Fuller's non-compete agreements, involved violations made by both former employees only *after* the conclusion of their employment

with Service First. It is true that the non-compete agreements generally relate to their employment at Service First, but the time, space, and origin of the two claims are distinct. *Adair*, 680 N.W.2d at 398. This is especially so given the nature of the action here, where Etherton and Fuller were defendants in the first action and are now plaintiffs in this action. Res judicata does not call for such an overly harsh result.

The two courts to have considered similar claims with similar procedural postures both held that res judicata does not apply in such a situation. *See Bodle v. TXL Mortg. Corp.*, 788 F.3d 159, 165-66 (5th Cir. 2015) (applying Texas law); *Viciedo v. New Horizons Computer Learning Ctr. of Columbus, Ltd.*, 246 F. Supp. 2d 886, 906-07 (S.D. Ohio 2003) (applying Ohio law). The majority distinguishes *Bodle*, citing Etherton's and Fuller's concession that Texas' res judicata standard differs from Michigan's, albeit, without analyzing how those differences affect the outcome in this case,[1] and it further does nothing to address *Viciedo*.

In *Viciedo*, the defendant-employer sought summary judgment to dismiss the plaintiff-employee's FLSA claims against it for failure to pay overtime compensation. 246 F. Supp. 2d at 906. Like here, the defendant-employer argued that, because there was a final judgment rendered on the merits in a prior action between the parties pursuant to the plaintiff-employee's breach of a

---

[1] Texas also uses the transactional approach, but instead of focusing on whether the actions involved the same transaction, the court focuses on whether the instant action arose out of the same "subject matter" as the previous action. *Bodle*, 788 F.3d at 166 (quoting *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992)). "An action arises from the same subject matter of a previous suit where the same factual matters that made up the gist of the prior action form the factual basis of the subsequent action." *Id.* Given the closeness between the two standards, it is not surprising that the factual inquiries made by the Fifth Circuit applying Texas law are strikingly similar to those raised by the majority applying Michigan law:

> In order to support their claims, the defendants would have needed to show a valid noncompetition agreement and evidence that the plaintiffs [violated the agreement]. In the instant FLSA lawsuit, the plaintiffs would need to prove that they worked overtime hours for which they were not compensated. Thus, the two cases do not involve the same subject matter, and the second suit is therefore not barred by res judicata.

*Id.*

non-compete agreement, the plaintiff-employee's FLSA claims were barred by res judicata. *Id.* The district court disagreed, holding that the plaintiff-employee's claims did not arise from the same transaction as the subject of the prior state court action. *Id.* at 907.

Although decided under Ohio law, the determinative question was essentially the same— whether the claims arose out of the same transaction or occurrence. *Id.* at 906.

> While both the prior case and the current matter relate to [plaintiff-employee's] employment relationship with [defendant-employer], the aspects of the employ- ment relationship at issue in the two cases are quite distinct. In the prior state court case, the issues centered on [*plaintiff-employee's*] conduct *after* his employment with [defendant-employer]. In this case, however, the focus is on [*defendant-em- ployer's*] conduct *during* [plaintiff-employee's] employment. . . . [T]he two actions differ with respect to the actor whose conduct serves as the origin of the claim, the place of that actor's conduct, the motivation, and the relevant time frame.

*Id.* at 907 (emphasis in original).

As in *Viciedo*, Etherton's and Fuller's FLSA claims here arose during their employment with Service First and relate to aspects of their work, which may or may not entitle them to over- time compensation. Service First's claim in the prior state court action, however, related strictly to Etherton's and Fuller's conduct after the conclusion of their employment with Service First. Therefore, I believe that res judicata does not apply and would reverse the district court's grant of summary judgment to Service First, vacate its denial of Etherton's and Fuller's motion for partial summary judgment, and remand the action consistent with this analysis.